United States Court of Appeals
Fifth Circuit

**F I L E D**

October 16, 2003

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 02-30365

MARITREND, INC.,

Plaintiff – Appellant,

VERSUS

SERAC & COMPANY (SHIPPING) LTD., et al.,

Defendants;

SEVILLA WAVE M/V, her engines, tackle, apparel, etc., <u>in rem</u>,

Defendant – Appellee;

PIMPERNEL SHIPPING COMPANY, LTD.,

Claimant – Appellee.

Appeal from the United States District Court
For the Eastern District of Louisiana

Before WIENER, BENAVIDES, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

Maritrend, Inc., appeals the district court's ruling that it waived its maritime lien on a vessel to which it had provided stevedoring services. We reverse and remand this case for the

-1-

entry of judgment in favor of Maritrend on its in rem claim against the vessel.

## I.  BACKGROUND

In July 2000, Maritrend contracted with Serac & Company (Shipping) Ltd. ("Serac"), the agent for an undisclosed charterer, to provide stevedoring services to the M/V SEVILLA WAVE in the Port of New Orleans.  After providing those services, Maritrend sent invoices to Serac but never received payment.[1]

Seeking to recover the value of its services, Maritrend filed an in personam action against Serac in the United States District Court for the Eastern District of Louisiana.  Maritrend later amended its complaint to add an in rem claim against the SEVILLA WAVE, which it simultaneously seized.  Pimpernel Shipping Company, Ltd. ("Pimpernel"), claimed ownership of the vessel and filed an answer to the amended complaint.

After a full bench trial, the district court found Serac liable in personam to Maritrend for the claimed amount, $73,104.80, plus interest.[2]  But the court rejected Maritrend's in rem claim against the SEVILLA WAVE, concluding that Maritrend had relied

---

[1]  Maritrend did not invoice the SEVILLA WAVE, its owner, or its agent for the stevedoring services.  Maritrend did, however, invoice the SEVILLA WAVE (through the vessel's agent) for standby time it incurred when the vessel's crane malfunctioned.  The district court found that the vessel was liable for the standby time and entered judgment against the vessel's owner accordingly. That portion of the judgment is not at issue in this appeal.

[2]  Serac provided no defense against Maritrend's claim.

solely on Serac's credit for payment for its stevedoring services and had therefore waived its maritime lien against the vessel. Maritrend timely appealed.

## II. ANALYSIS

### A. Standard of Review

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed <u>de novo</u>."[3]  However, "[t]he clearly erroneous standard of review does not apply to [those] factual findings made under an erroneous view of controlling legal principles."[4]

### B. Creation and Waiver of Federal Maritime Liens

Congress enacted the Federal Maritime Lien Act ("FMLA") in 1910 to bring uniformity to the law governing maritime liens.[5] Although Congress recodified the FMLA in 1988 as part of the Commercial Instruments and Maritime Liens Act ("CIMLA"),[6] it did not make any substantive changes to the law.[7]  Section 31342(a) of the current codification provides that

---

[3]  <u>Kona Tech. Corp. v. S. Pac. Transp. Co.</u>, 225 F.3d 595, 601 (5th Cir. 2000).

[4]  <u>Lake Charles Stevedores, Inc. v. PROFESSOR VLADIMIR POPOV M/V</u>, 199 F.3d 220, 223 (5th Cir. 1999).

[5]  <u>Racal Survey U.S.A., Inc. v. M/V COUNT FLEET</u>, 231 F.3d 183, 187 (5th Cir. 2000).

[6]  <u>See</u> 46 U.S.C. §§ 31301–31343.

[7]  <u>See</u> <u>Racal Survey</u>, 231 F.3d at 188 (stating that the caselaw that developed under the FMLA remains "persuasive, if not controlling").

> a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner – (1) has a maritime lien on the vessel; (2) may bring a civil action in rem to enforce the lien; and (3) is not required to allege or prove in the action that credit was given to the vessel.[8]

"Necessaries" include stevedoring services,[9] and there is no dispute here that Maritrend provided such services to the SEVILLA WAVE. It is likewise undisputed that Serac had the authority to procure necessaries, including stevedoring services, for the SEVILLA WAVE. The only question before us is whether Maritrend relied on the credit of the SEVILLA WAVE for payment for its services.

Prior to the initial passage of the FMLA, "the law was settled that a federal maritime lien could arise only for necessaries furnished in reliance upon the credit of the vessel. Credit to the ship, as distinguished from credit to the owner, was essential to the existence of a maritime lien."[10] Although § 31342(a)(3) of the CIMLA, like former § 971 of the FMLA, provides that the supplier "is not required to allege or prove . . . that credit was given to the vessel," the Supreme Court has held that this language "serve[s] only to remove from the creditor the

---

[8] 46 U.S.C. § 31342(a).

[9] See TTT Stevedores of Texas, Inc. v. M/V JAGAT VIJETA, 696 F.2d 1135, 1138 (5th Cir. 1983) (stating that "[t]here is no question that supplying stevedoring services gives rise to a maritime lien").

[10] Equilease Corp. v. M/V SAMPSON, 793 F.2d 598, 605 (5th Cir. 1986) (en banc).

-4-

burden of proving that he had relied on the credit of the vessel."[11]  We have therefore recognized that "the idea of credit to the vessel being a prerequisite to a lien, and the concomitant principle that credit to the owner negates the lien, are still very much with us today."[12]  Thus, under § 31342(a), "a presumption arises that one furnishing supplies to a vessel acquires a maritime lien, and the party attacking this presumption has the burden of establishing that the personal credit of the owner or charterer was solely relied upon."[13]  "To meet this burden, evidence must be produced that would permit the inference that the supplier purposefully intended to forego the lien."[14]

Because the statutory presumption in favor of a maritime lien is a strong one, we are usually reluctant to conclude that a supplier has waived its lien.[15]  We have held that the supplier's

---

[11]  Id. (discussing Piedmont & George's Creek Coal Co. v. Seaboard Fisheries Co., 254 U.S. 1 (1920)).  See Racal Survey, 231 F.3d at 189 (noting the similarity between current § 31342(a)(3) and the provision of the FMLA that the Supreme Court construed in Piedmont).

[12]  Equilease, 793 F.2d at 605.

[13]  Id.

[14]  Id. at 606.

[15]  This is particularly true when the case concerns traditional services such as stevedoring.  See Atl. & Gulf Stevedores, Inc. v. M/V GRAND LOYALTY, 608 F.2d 197, 201 (5th Cir. 1979) (finding that it "was the intent of the Congress to make it easier and more certain for stevedores and others to protect their interests by making maritime liens available where traditional services are

-5-

primary reliance on the personal credit of a charterer is insufficient to rebut the statutory presumption. For example, in Gulf Trading & Transportation Co. v. The Vessel HOEGH SHIELD ("HOEGH SHIELD"), the plaintiff brought an in rem action against a vessel to which it had supplied fuel within the territorial jurisdiction of the United States pursuant to a contract with the vessel's English charterer.[16] After delivering the fuel, the plaintiff sent an invoice to the charterer in London, but the charterer never made payment.[17] In the action against the vessel, the vessel's owner argued that the plaintiff had waived its maritime lien because: (1) according to the deposition testimony of the plaintiff's credit agent, the fuel was supplied on the charterer's credit; (2) there had been no conversations between the plaintiff and the vessel's owner; (3) the plaintiff never sent an invoice to the vessel's owner; and (4) the plaintiff took no action against the vessel until the charterer became insolvent.[18] Although these facts clearly indicated that the plaintiff was relying on the charterer's credit when it supplied the fuel, we held that they were insufficient to establish sole reliance on that credit or to permit an inference

---

routinely rendered").

[16] 658 F.2d 363, 364–65 (5th Cir. Unit A Oct. 1981).

[17] Id. at 364.

[18] See id. at 366, 368.

that the plaintiff purposefully intended to forgo its lien on the vessel.[19]

Similarly, we concluded in Gulf Oil Trading Co. v. M/V CARIBE MAR, that sole reliance on personal credit, as opposed to the credit of the vessel, was not established even though the creditor had a long-term business relationship with the charterer, had extended large amounts of credit to the charterer in the past, and was aware of the prohibition of lien clause in the contract.[20] Thus, "the simple existence of a business relationship and credit arrangements could hardly be realistically construed as an intent or purpose by [the creditor] to waive its lien on the vessel."[21]

Despite our prior caselaw reiterating the difficulty of proving that a creditor has waived its lien, two cases subsequent to HOEGH SHIELD and Gulf Oil Trading Co. identify the circumstances that support a finding of waiver. In Equilease Corp. v. M/V SAMPSON, this court determined that sufficient evidence exists to find that a creditor waives its right to a federal maritime lien when a creditor's testimony that he relied solely on entities besides the vessel for credit is combined with unambiguous statements in the creditor's original brief

---

[19] Id. at 368.

[20] 757 F.2d 743, 750 (5th Cir. 1985).

[21] Id.

indicating the credit relied on was not the vessel's.[22]  The fact that the creditor also testified that "[t]here was no intent for us to give up anything" did not disturb the district court's finding that any federal maritime lien that existed was waived because the bulk of the evidence and testimony showed that creditor did not rely on the credit of the vessel.[23]

In Racal Survey U.S.A., Inc. v. M/V COUNT FLEET, this court found that a creditor had clearly indicated its intent to forgo a federal maritime lien based on the testimony of the creditor company's president.[24]  When asked whether the creditor was relying on the credit of the ship, the creditor's president testified that there was no reliance because the customer was a stevedoring company, not the vessel or the vessels' owner, and thus he had no contract or dealings with the ship.[25]  In finding waiver, this court stated that "[a]lmost nothing is more conclusive than such testimony" on the critical issue of the reliance necessary to preserve the lien.[26]

Taken together, Equilease and Racal Survey stand for the

---

[22]  See 793 F.2d 606, 607 (5th Cir. 1988).

[23]  Id.

[24]  See 231 F.3d 183, 189.

[25]  Id.

[26]  Id. at 190.  This court has also stated that testimony reflecting that a creditor looked exclusively to another party for payment would also create the inference that the creditor was not relying on the vessel for payment.  Id.

proposition that testimony regarding which party a creditor relied on can be determinative of whether the maritime lien was waived.  But those decisions did not weaken the heavy burden placed on the party attacking the presumption.  If the evidence shows that the claimant relied on the credit of the vessel to some extent, we will not find a waiver of the maritime lien.[27]

## C.   The Evidence at Trial and Review of the District Court's Decision

A bench trial in this case was held on January 14, 2002.  At trial, the district court heard testimony and was presented exhibits on behalf of both parties.  Maritrend president William Bergeron ("Bergeron") testified that Maritrend "initially rel[ies] upon the contract that we have with the party, but we always rely on a maritime lien right," as a "fallback position." Indeed, in his testimony, Bergeron attests to this belief at least five times.  Bergeron also indicated that he thought Serac owned the vessel to which Maritrend was providing stevedoring services. Similarly, Donald Broussard, an employee at Maritrend, testified that "the first course of action" was always to recover payment from Serac, but if it failed to pay, the company "implemented vessel seizure procedures."  Finally, Petra Smith, Maritrend's vice president, testified that it was her responsibility to collect delinquent and overdue invoices for

---

[27]  See Equilease, 793 F.2d at 607 n.12.

stevedoring services and that she only contacted Serac, as opposed to the owners or managers of the SEVILLA WAVE, for payment.

Among the exhibits offered at trial were the tariff document and copies of invoices. The tariff document, which was part of the stevedoring services contract, was prepared by Maritrend and placed on file with the Board of Commissioners of the Port of New Orleans. The tariff document does not explicitly state that the SEVILLA WAVE was responsible for stevedoring services, however, as the district court noted, there was no indication in the tariff document or any of the record evidence that Maritrend intended to waive its federal maritime lien. While the invoices were not sent directly to the SEVILLA WAVE, they indicated on their face that the charges contained therein were made "FOR THE ACCOUNT OF THE OWNER(S)/AGENT(S) AND/OR CHARTERER(S) OF THE M/V SEVILLA WAVE." There is no language on the invoices that indicates any intent to waive a maritime lien.

In holding for Pimpernel, the district court found that the trial testimony established that "Maritrend relied solely on the credit of Serac, its customer, for payment of [the stevedoring] services."[28] It rested its decision on the both testimonial and documentary evidence. The principal testimony that the district court relied on was the testimony that Maritrend failed to seek

[28] Maritrend, Inc. v. Serac & Co., 2002 U.S. Dist. LEXIS 2483 at *5-6 (E.D. La. 2002).

-10-

payment from the vessel until several months after non-payment by Serac and that Maritrend expected its customer, Serac, to pay the invoices. The district court also noted that the documentary evidence supported its conclusion because Maritrend's invoices were only addressed and sent to Serac and the tariff document was silent as to whether the vessel was responsible for stevedoring charges.

The district court also stated that in light of our decisions in Racal Survey and Equilease, it was bound to rule against Maritrend. It decided this despite the fact that it found Bergeron's testimony that Maritrend always relied on the credit of the vessel as a fallback position when providing stevedoring services was "completely credible,"[29] and "the record evidence did not suggest any reason that Maritrend would relinquish its right to a lien."[30]

After reviewing the record and applicable case law, we find that there was insufficient evidence adduced at trial to overcome the presumption that Maritrend relied on the credit of the SEVILLA WAVE with respect to the stevedoring services it provided in order to preserve a federal maritime lien. This court has repeatedly indicated the strength of the maritime lien presumption, especially in traditional areas such as

---

[29] Id.

[30] See id. at * 8, n.8(internal citation and quote omitted).

-11-

stevedoring.[31]  Such a strong presumption in favor of a lien

places a "heavy burden" on parties seeking to show a waiver of

the lien, forcing them to show that a creditor "<u>deliberately</u>

<u>intended</u> to forego the valuable privilege which the law accords

and look solely to the owner's personal credit."[32]  Neither

<u>Equilease Corp.</u> nor <u>Racal Survey</u> weakens this presumption or the

burden placed on the party attacking the presumption.[33]

In applying this standard, this court has found testimonial

evidence sufficient to defeat this presumption only in cases

where testimony "<u>clearly indicate[d]</u> that [the creditor] did not

rely on the credit of the vessels,"[34] and there was no other

evidence, testimonial or otherwise, supporting the creditor's

reliance on the vessel.[35]  Furthermore, this court has found

---

[31] <u>See</u> <u>Atlantic & Gulf Stevedores, Inc. v. M/V GRAND LOYALTY</u>, 608 F.2d 197, 201 (5th Cir. 1979) (finding that it "was the intent of the Congress to make it easier and more certain for stevedores and others to protect their interests by making maritime liens available where traditional services are routinely rendered").

[32] <u>Gulf Oil Trading Co.</u>, 757 F.2d at 750 (emphasis in original) (citations and internal quotation marks omitted).

[33] <u>See</u>, <u>e.g.</u>, <u>Equilease</u>, 793 F.2d at 605-606; <u>Racal Survey</u>, 231 F.3d 189.

[34] <u>Racal Survey</u>, 231 F.3d at 190 (emphasis added).  <u>See</u> <u>also</u> <u>Point Landing, Inc.</u>, 261 F.2d at 867 (suggesting that "convincing testimony" in conjunction with other evidence might be enough to rebut the presumption).

[35] <u>See</u> <u>Equilease</u>, 793 F.2d at 606 (weighing testimony indicating that the creditor had relied on the owner's and charter's personal credit for payment against vague testimony that the creditor did not intend "to give up anything"); <u>Racal Survey</u>,231 F.3d at 189-90 (finding clear evidence that Racal had not relied on the credit of

evidence such as only invoicing the charterer or a long-standing business relationship with the charterer to be inadequate to show that a creditor relied solely on such charterer.[36]

Here, neither testimonial nor documentary evidence supports the conclusion that Maritrend "solely relied" on the credit of Serac. First, although the testimony as a whole shows that Maritrend relied on Serac for payment, it also shows that Maritrend did not rely solely on Serac because it was aware of and generally relied upon its maritime lien rights against the SEVILLA WAVE. Bergeron, who the district court found "completely credible," testified that Maritrend always intended to rely on the credit of the vessel as a "fallback" position. This testimony was further supported by Broussard's statement that Maritrend's practice was to implement ship seizure procedures when invoices for stevedoring services were not timely paid. Therefore, this situation is unlike the cases in Equilease and Racal Survey, where there was clear testimonial evidence by the party seeking to impose a federal maritime lien that it did not rely on the credit of the vessel.[37]

Second, the documents presented to the district court

_____

the vessel when its president testified that he had no contract or dealings with the company that owned the vessel, nor was he relying on its credit when it entered into a contract with the charterer).

   [36] Gulf Oil Trading Co.,757 F.2d at 750.

   [37] See Equilease, 793 F.2d at 606; Racal Survey, 231 F.3d 189-90.

-13-

provide no evidence that Maritrend did not rely on the credit of the vessel. As discussed above, invoicing only the charterer is not dispositive because it only shows that a party attempted to receive the payment from the charterer first, not that it never intended to rely on the credit of the vessel.[38] It is true that the tariff document expressly identifies certain charges to be applied to the vessel and that this list does not include stevedoring services. Again, this only shows that Serac, the charterer, was initially responsible for the stevedoring payments. Nothing in the tariff document shows that Maritrend did not intend to seek payment from the vessel in the event that Serac failed to pay. Therefore, these documents are insufficient to overcome the strong presumption that a federal maritime lien exists when necessaries, such as stevedoring services, are provided to a vessel.

In sum, we disagree that our decisions in Equilease and Racal Survey compelled the district court to rule against Maritrend based on these case facts. As the district court observed, Maritrend's resorting to its lien only after Serac defaulted is "typical of what is done in the normal course of business."[39] If a supplier of necessaries forfeits his lien on the vessel by conducting his business in accordance with this

---

[38] See HOEGH SHIELD, 658 F.2d at 368.

[39] Maritrend, at *6, n.5.

-14-

prevailing practice, then the lien would be available only to suppliers who do not need it.  Neither the CIMLA nor our cases interpreting its provisions supports such a result.  The implied maritime lien is a security device, and its purpose is "to enable a vessel to obtain supplies or repairs necessary to her continued operation by giving a temporary underlying pledge of the vessel which will hold until payment can be made or more formal security given."[40]  We would frustrate this purpose if we prohibited enforcement of the lien whenever the supplier's efforts to collect from the person who ordered the necessaries were unsuccessful.

Although Maritrend expected Serac to pay for the stevedoring services, and its conduct reflected that reasonable expectation, Bergeron's trial testimony established that Maritrend relied on the credit of the SEVILLA WAVE as a "fallback position," which is exactly what the law contemplates.[41]  Because Pimpernel offered

---

[40] PROFESSOR VLADIMIR POPOV, 199 F.3d at 223 (quoting S. Coal & Coke Co. v. F. Grauds Kugniecibas ("The Everosa"), 93 F.2d 732, 735 (1st Cir. 1937)).

[41] As Judge John R. Brown explained in an opinion he wrote for the Eleventh Circuit, that a supplier of necessaries expected payment from the party with whom it contracted is of "no decisive significance" in cases such as this one:

Expectations that payment for the service would be made by some party other than the vessel does not vitiate a lien by one who, as permitted under § [31342(a)(3)], is not required to prove reliance on the credit of the vessel. . . .  The classic case in its simplest form involves a time-charterer who, under the charter is responsible for paying for the loading and discharge of

-15-

no evidence to rebut that testimony, and the district court did not find that testimony incredible, it could not meet its burden of proving that Maritrend relied solely on Serac's credit.  We therefore hold that the district court's finding that Maritrend waived its lien on the SEVILLA WAVE was erroneous as a matter of law.

## III.  CONCLUSION

For the foregoing reasons, we reverse the district court's ruling that Maritrend waived its maritime lien on the SEVILLA WAVE and remand this case for the entry of judgment in favor of Maritrend on its _in rem_ claim against the vessel for the value of the stevedoring services it provided.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**

---

cargo, arranges with a contracting stevedore to furnish the services including that of longshoremen.  Obviously, the stevedore _expects_ to be paid by the charterer.  On failure of the time-charterer to pay, the stevedoring contractor has a maritime lien.  His earlier and initial expectations do not diminish or destroy the stevedore's maritime lien.

Stevens Technical Servs., Inc. v. United States, 913 F.2d 1521, 1536 (11th Cir. 1990).