**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**March 24, 2005**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 03-31157
_____


PACORINI USA INC; ET AL,

                                    Plaintiffs,

PACORINI USA INC;
CLEAR WATER SHIP AGENCY INC.,

                                    Plaintiffs-Appellees,

versus

ROSINA TOPIC MV, ETC; ET AL,

                                    Defendants,

ROSINA TOPIC MV, HER ENGINES,
TACKLE, APPAREL, ETC., *IN REM*,

                                    Defendants-Appellants.

---

Appeal from the United States District Court
for the Eastern District of Louisiana
03-CV-381

---

Before GARWOOD, JONES, and PRADO, Circuit Judges.

Edith H. Jones, Circuit Judge:[*]

        This case arises from an <u>in rem</u> action against a vessel

for payment for services provided to that vessel.  Despite the

vessel's waiver of the issue below, we hold that Clear Water lacked

---

        [*]        Pursuant to 5TH CIR. R. 47.5, the court has determined that this
opinion should not be published and is not precedent except under the limited
circumstances set forth in 5TH CIR. R. 47.5.4.

standing, and the district court thus lacked jurisdiction, over claims belonging to the stevedore Lockwood. The vessel's complaints against the judgment for the stevedore Pacorini are misplaced. We AFFIRM IN PART, REVERSE IN PART, and RENDER.

**BACKGROUND**

The M/V ROSINA TOPIC ("ROSINA TOPIC") is a Liberian flag vessel chartered at all times relevant to this appeal to TorMar Shipping, A.S. ("TorMar"), a Norwegian corporation. TorMar engaged Clear Water Ship Agency, Inc. ("Clear Water") to coordinate the discharge of various lots of cargo carried by the vessel. TorMar authorized Clear Water to procure stevedoring services for the vessel, as well as such barging services as might be needed.

The ROSINA TOPIC began its journey in St. Petersburg, Russia, carrying cargo that included zinc ingots, copper wire, aluminum t-bars, and steel bars. The vessel first called in Newark, New Jersey. Lockwood International ("Lockwood"), hired by Clear Water, provided stevedoring services in Newark, and Lockwood, in turn, hired two more companies to discharge the relevant cargo in Newark. The vessel then continued south, and on January 24, 2003, the ROSINA TOPIC docked in New Orleans, Louisiana, at a mid-stream buoy system owned by Zito Anchorage, LLC ("Zito"). Pacorini U.S.A., Inc. ("Pacorini"), a stevedoring company, had negotiated with the relevant parties to unload part of the cargo in New Orleans. Specifically, Pacorini had an agreement from Glencore,

2

the lead cargo interest for the cargo onboard the ROSINA TOPIC, to discharge part of the cargo (a portion of the steel bars and zinc) on a "liner out" basis. When cargo is unloaded on a "liner out" basis, the line, charterer, or vessel is responsible for all stevedoring charges.[1]

Around this time, Pacorini and the other parties became aware that the charterer, TorMar, had become financially unstable.[2] When TorMar's insolvency became apparent, all named plaintiffs demanded adequate assurance of payment from all interested parties, including the vessel interest for the services that are the subject of the instant suit. As part of this demand, on January 29, 2003, Pacorini threatened to halt work, after it had already discharged approximately two-thirds of the "liner out" cargo. At this point, Pacorini also entered negotiations with Glencore, owner of the "liner out" cargo, about guaranteeing payment for discharge of the zinc portion of the "liner out" cargo if Pacorini was otherwise unable to obtain payment or security from the vessel interests.

The "through" bill of lading for the steel bars required delivery to Chicago to Aurora USA, Inc. ("Aurora"), which owned that particular cargo. Although the ROSINA TOPIC was supposed to continue to Chicago, the operators learned that it was too large to

---

[1] Additionally, Glencore hired Pacorini separately to discharge part of the aluminum t-bars on a "free out" basis. This second aspect of the transactions is not at issue here. When cargo is unloaded on a "free out" basis, the cargo owner or receiver is responsible for all stevedoring charges.

[2] TorMar ultimately filed for bankruptcy in Norway on February 19, 2003.

navigate up the Mississippi River. Clear Water, as shipping agent, then hired Lockwood to arrange barge transportation of the steel bars from New Orleans to Chicago and for stevedoring services on arrival. On January 31, 2004, Lockwood issued an invoice to Clear Water in the total amount of $17,350, representing $13,300 for barging the steel from New Orleans to Chicago, and $4,050 for stevedoring services in Chicago. On February 4, 2003, the steel bars were successfully unloaded from the ROSINA TOPIC to the appointed barge in New Orleans. On February 8, Clear Water advised Aurora that Lockwood was holding the barge in New Orleans pending payment for its services. In spite of this threat, however, the barge eventually made its trip and the steel bars were unloaded in Chicago. Although neither Lockwood nor its hired stevedore Ceres was ever paid, at no time did either company assign its claims to Clear Water.

On February 7, 2003, Clear Water, Zito, and Pacorini filed a complaint against the vessel, in rem, seeking to have the vessel arrested. That same day, Topal Navigation Company, Inc., the owner of the vessel, deposited $205,178.08 in the registry of the court in lieu of arrest.

Following a bench trial, the district court delivered oral reasons and entered a written judgment in favor of the three plaintiffs. The district court found that all three plaintiffs had provided necessaries to the vessel and were entitled to maritime liens to secure payment. Additionally, the court found that all

4

plaintiffs maintained their liens on the vessel, and that none of the named plaintiffs waived their rights to assert maritime liens against the vessel. The district court awarded Clear Water $5,000 for the services provided to the vessel as the ship's agent. This award is not disputed in the appeal. The district court also ruled in Clear Water's favor for the expenses paid to Lockwood for stevedoring and barge transportation services in Newark, New Orleans, and Chicago. Specifically, the district court held "that Clear Water is obligated to collect and pay Lockwood for stevedoring services in Newark which amount to $2,177.85, and Chicago in the amount of $4,050, as well as the charges associated with barge movement of cargos from New Orleans to Chicago in the amount of $13,300." District Court Op. at 10. The district court awarded docking and line handling fees to Zito. This award has not been appealed. The district court also awarded Pacorini $42,950 for the discharge of a cargo of zinc while the vessel was moored in New Orleans, rejecting the contention that Glencore entered into a valid agreement to guarantee these payments.

The vessel timely filed a notice of appeal. On motion of the vessel, the district court ordered payment of the parts of the judgment which were not subject to appeal and stayed execution on the remainder of the judgment.

## DISCUSSION

5

Appellant-Defendant ROSINA TOPIC raises several claims of error. First, the ROSINA TOPIC contends that Clear Water lacked standing to assert claims for charges owed to Lockwood, and thus the district court's award to Clear Water should be reversed because that court lacked jurisdiction. In the alternative, the vessel claims the district court erred as a matter of fact in finding that Clear Water had a valid maritime lien against the ROSINA TOPIC. Second, the vessel contends the award to Pacorini should be reversed because Pacorini waived its maritime lien. Finally, the vessel asserts that the district court erroneously awarded Pacorini excessive damages.

Upon appeal of a judgment rendered through a bench trial, we review the factual findings for clear error and conclusions of law de novo. See Maritrend, Inc. v. Serac & Co., 348 F.3d 469, 470 (5th Cir. 2003). Factual determinations made under an erroneous view of legal principles are reviewed de novo. Id. Additionally, mixed questions of law and fact are reviewed de novo. See Davis v. Odeco, Inc., 18 F.3d 1237, 1244 n.30 (5th Cir. 1994).

The requirement that a party have legal standing to assert a violation of legal rights is a constitutional requirement of jurisdiction that must exist throughout the litigation and cannot be waived. See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 475-76, 102 S. Ct. 752, 760 (1982); Warth v. Seldin, 422 U.S. 490, 498-99, 95 S. Ct. 2197, 2205 (1975); Asbestos Information Assoc./North

6

America v. Reich, 117 F.3d 891, 893 (5th Cir. 1997).  To have standing, (1) a plaintiff must have suffered an actual injury of a legally protected interest which is both (a) concrete and particularized and (b) actual or imminent; (2) a causal connection must exist between the injury and the complained of conduct; and (3) a likelihood must exist that a favorable decision will redress the injury.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136 (1992).

As Clear Water never paid Lockwood any of the costs Lockwood was due for services rendered to the vessel, it lacks a cognizable "injury" from the dispute unless it somehow inherited the claims Lockwood had against Defendants-Appellants.  Cf. Florida Dep't of Ins. v. Chase Bank of Tex. Nat. Ass'n, 274 F.3d 924, 931 (5th Cir. 2001).  Under general maritime law, a maritime agent acting on behalf of a disclosed principal is not liable for contract claims stemming from contracts the agent executes on the principal's behalf.  See Atlantic & Gulf Stevedores, Inc. v. Revelle Shipping Agency, Inc., 750 F.2d 457, 459 (5th Cir. 1985). Clear Water, as the agent of disclosed principals ROSINA TOPIC and/or TorMar, could not have been held liable to Lockwood for claims arising out of contracts Clear Water executed on these principals' behalf.  Thus the opposite is also true: where Clear Water risked no liability, it can win no recovery as agent to disclosed principals.  Moreover, Clear Water offered no evidence in the district court that Lockwood had assigned its claims against

7

Defendants-Appellants to Clear Water. Clear Water lacks standing to sue and recover from the Defendants-Appellants — and in fact has lacked standing from the outset of the lawsuit.[3] Thus we must reverse the district court on its decision awarding damages to Clear Water; the judgment in Clear Water's favor for $19,527.85 is REVERSED.[4]

For two reasons, the vessel contends the district court erred in awarding damages to Pacorini because Pacorini waived its maritime lien. A supplier of necessaries enjoys a strong presumption that it has not waived its maritime lien. Gulf Oil Trading Co. v. M/V CARIBE MAR, 757 F.2d 743, 750 (5th Cir. 1985). To overcome this presumption, a defendant bears the burden of showing that the plaintiff took affirmative actions that manifested plaintiff's clear, purposeful, and deliberate intention to forego the maritime lien. Id.

First, the vessel asserts that Pacorini waived its maritime lien by filing a premature in rem suit. But this case is

---

[3] At oral argument, counsel for the vessel conceded that he had never raised this argument in the district court — and in fact intentionally chose not to raise such an argument. The fact that this jurisdictional defect can be raised and addressed in the first instance in this court is an irreducible truth of constitutional law. However, that legal point does not mean that a party serves his client, the interests of justice, or his ethical obligations sufficiently by failing to raise the argument in the first instance in the district court. This "strategic decision" wasted judicial resources. Although we will not impose sanctions for this infraction, we trust that counsel will refrain from this course of action in the future.

[4] Because the district court lacked jurisdiction to adjudicate Clear Water's claims arising from Lockwood's charges, we need not address the vessel's alternative argument as to whether Clear Water had a valid maritime lien against the ROSINA TOPIC.

unlike <u>Veverica v. Drill Barge Buccaneer No. 7</u>, 488 F.2d 880 (5th Cir. 1974), where premature <u>arrest</u> of a vessel constituted an independent breach of the contract giving rise to the lien, and where the court determined that the vessel did not have to be seized to protect the lien.  Here, Pacorini did not immediately seize the vessel but instead notified all vessel representatives prior to the suit, prompting them to post security and avoid arrest and the interruption of trading.  Finding waiver or repudiation of a maritime lien under these circumstances would vitiate an important aspect of maritime law — providing a maritime lien to stevedores servicing vessels. <u>See</u> <u>Atlantic & Gulf Stevedores, Inc. v. M/V GRAND LOYALTY</u>, 608 F.2d 197, 201 (5th Cir. 1979) ("[I]t was the intent of the Congress to make it easier and more certain for stevedores and others to protect their interests by making maritime liens available where traditional services are routinely rendered.").

Second, the vessel points to the arrangement Pacorini made with Glencore for payment as evidence of waiver.  At trial, however, the court found that Glencore's willingness to guarantee payment for the discharging of the zinc portion of the liner out cargo was contingent upon Pacorini's inability to secure payment or security from an alternative source. This arrangement between Pacorini and Glencore did not amount to a sufficiently "clear and unequivocal" intent to rely exclusively on the credit or security of a cargo receiver to constitute waiver of a maritime lien.  The

9

district court's determination comports with our relevant caselaw, which establishes that "[i]f the evidence shows that the claimant relied on the credit of the vessel to some extent, we will not find a waiver of the maritime lien." Maritrend, Inc. v. Serac & Co., 348 F.3d 469, 473 (5th Cir. 2003). We will not disturb this aspect of the district court's decision.

Finally, the vessel challenges Pacorini's damage award as excessive. We review this factual determination for clear error. See Sosa v. M/V LAGO IZABAL, 736 F.2d 1028, 1035 (5th Cir. 1984). A verdict is excessive if it is greater than the maximum amount a trier of fact could properly have awarded. Caldarera v. Eastern Airlines, Inc., 705 F.2d 778, 784 (5th Cir. 1983).

The trial court awarded Pacorini the invoiced amount of $42,950, which that court considered "reasonable and justified" based on the evidence. The vessel contends that this award is $7,000 higher than the original amount Pacorini agreed to charge. However, the district court considered this amount the appropriate market rate; the lower price quote reflected a "volume discount." As TorMar became insolvent, its inability to produce additional volume for Pacorini justified Pacorini's unwillingness to extend the concomitant discount. The district court did not clearly err in awarding this level of damages; we thus affirm all aspects of the award to Pacorini.

10

**AFFIRMED IN PART, REVERSED IN PART,** and **RENDERED. JUDGMENT RENDERED IN REVISED AMOUNT.** Each party shall bear their own costs on appeal.