**CLUBB OIL TOOLS, INC., Plaintiff,**

v.

**M/V GEORGE VERGOTTIS, Her engines, boilers, tackle and cargo, In Rem, Pacific Marine Corporation, Trefalcon Sales Company, and Franconia Sea Transport, Ltd., In Personam, Defendants.**

**Civ. A. No. 76–B–168.**

United States District Court, S. D. Texas, Brownsville Division.

Aug. 10, 1978.

---

Jeffrey D. Roerig, Cox, Wilson, Black & Roerig, Brownsville, Tex., for plaintiff.

J. Michael Mahaffey, Kleberg & Weil, Corpus Christi, Tex., for defendants M/V George Vergottis & Franconia Sea Transport.

Benjamin S. Hardy, Hardy, Rodriguez, Colvin & Lanford, Brownsville, Tex., for defendant Pacific Marine.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CARL O. BUE, Jr., District Judge.

### INTRODUCTION

This is an action brought by Clubb Oil Tools, Inc. ("plaintiff") against the M/V GEORGE VERGOTTIS, her engines, boilers, tackle and cargo, in rem, to foreclose on a maritime lien and an action against Trefalcon Sales Company ("Trefalcon"), Franconia Sea Transport, Ltd. ("Franconia") and Pacific Marine Corporation ("Pacific") on a debt. In addition, plaintiff alleges a fraud action against Trefalcon, and Franconia has brought a third-party complaint against Trefalcon pursuant to a Decision and Award entered March 17, 1978, by an arbitration board ordering Trefalcon to pay to Franconia any amount Franconia may be held liable for in the instant suit. All of the actions arise from plaintiff's rental of oil pipe to Trefalcon on or about July 30, 1976, to facilitate the loading of oil on board the GEORGE VERGOTTIS from an oil pit located approximately one mile from the vessel's berth in Brownsville, Texas.

Trefalcon failed to answer or appear at trial, and plaintiff and Franconia have moved for default judgment. Based on the following findings of fact and conclusions of law, the Court finds that plaintiff is entitled to damages for breach of contract against Trefalcon and is also entitled to a maritime lien against the GEORGE VERGOTTIS in the same amount, liability to be joint and several. In addition, Franconia is entitled to a default judgment on its third-party complaint against Trefalcon.

### FINDINGS OF FACT

1. Plaintiff is a Texas corporation engaged in the oil pipe rental business.

2. Trefalcon is a foreign corporation with offices in New York, New York, which has done business in the State of Texas by chartering vessels that call at Texas ports.

During July-August, 1976, it was the time charterer of the GEORGE VERGOTTIS. *See* Defendant's Exhibit 9.

3. Defendant Pacific is a foreign corporation with its principal place of business in New York, New York, involved in the business of acting as agent for maritime vessels during July-August, 1976.

4. Defendant M/V GEORGE VERGOTTIS is a Liberian registered vessel sailing under the flag of Liberia, official number 2502.

5. The Court finds that near the end of July, 1976, Mr. Gordon Vaughan, the then general manager of plaintiff, received a call from Mr. George Utley of Trefalcon inquiring about the rental of oil pipe for approximately ten days to use in the loading of oil aboard the GEORGE VERGOTTIS. After communicating with the other officers of Clubb, talking with Jack Garland, president of Trefalcon, and communicating by telephone with an individual who identified himself as an employee of Chase Manhattan Bank and who verified the credit of Trefalcon, Vaughan orally agreed with Utley to rent the pipe under the following terms: (1) 5,270 feet of pipe would be rented at .07 cents per foot per day; (2) Trefalcon agreed to pay transportation charges from Corpus Christi to Brownsville; (3) Trefalcon agreed to pay plaintiff's charges and expenses for stringing the pipe alongside the vessel; (4) Trefalcon agreed to pay the price of any pipe lost or damaged beyond repair during the rental; (5) Trefalcon agreed to pay plaintiff's charges and expenses for cleaning, testing and drifting the returned pipe after the rental term; (6) Trefalcon agreed to pay plaintiff's charges and expenses for repairing damaged pipe; and (7) Trefalcon agreed to return the pipe to Corpus Christi following the rental. The Court finds that this agreement constitutes a valid and enforceable oral contract.

6. Following the oral agreement, Utley told Vaughan that billing for the rental would be handled through Mr. Bud Koar of Pacific. Vaughan testified that in his conversations with Koar, he was not apprised of the agency/principal relationship between Trefalcon and Pacific and that he thereby concluded Pacific was assuming liability as a joint venturer. On the other hand, Koar testified, and the Court so finds, that he disclosed Pacific's agency relationship to Vaughan and that Pacific never represented that it would be jointly liable under the contract. Given the credibility of the witnesses and the manner and method of the negotiations, the Court finds that Pacific's agency relationship was apparent to plaintiff. This finding is buttressed by the first written instrument arising from the transaction, Plaintiff's Exhibit 4, which is plaintiff's delivery receipt for the pipe prepared by Vaughan and which invoices the ticket to Pacific as agent for Trefalcon.

7. On or about July 30, 1976, plaintiff loaded the pipe at its yard in Corpus Christi, and the following day the pipe was delivered in Brownsville pursuant to the terms of the contract.

8. On approximately August 9, 1976, Vaughan called Utley and was told that the pipe would be needed an additional five or six days. Subsequently, Utley informed Vaughan that even more time would be needed due to problems encountered in pumping the oil onboard the vessel, and Vaughan authorized an extension of the rental through August 31. Plaintiff was never formally notified that the rental agreement was terminated, and on September 15 it determined that the pipe had been abandoned. Subsequent demands for payment made to both Trefalcon and Pacific were unsuccessful, and on August 26, 1976, plaintiff filed this action. As previously noted, Trefalcon failed to answer or appear at trial to present any justification for its failure to honor the contract with plaintiff. Accordingly, the Court finds that Trefalcon materially breached the contract. Following the breach, and during the latter part of September, plaintiff sent its work crews to Brownsville to disassemble the pipe and return it to Corpus Christi where it was tested and repaired to the extent possible.

9. The evidence presented by plaintiff concerning damages was largely unchallenged by defendants, with the exception of

defendant Franconia's argument that by failing to electronically test, 4422 feet of pipe that was downgraded for use as lower grade pipe following the rental, plaintiff waived its claim to the $4,864.00 loss it claimed it sustained as a result of the downgrading. In the absence of any evidence indicating that the pipe need not have been downgraded, the Court concludes that plaintiff's damages should include this amount. There was ample evidence at trial concerning the harsh treatment the pipe sustained during the rental period due to the inartful way it was assembled and the stress it was exposed to from the bouncing up and down during the pumping of the oil/water mixture from the pit to the vessel. In addition, the compound placed on the pipe threads by Trefalcon during construction of the line was a seizing compound which had the effect of sealing the pipe so tightly that it was disassembled only with substantial damage to the pipe. It is therefore reasonable to conclude from all of the evidence that following this use it was no longer suitable for use as high grade pipe which must be able to withstand extreme pressure.

The Court finds that the total damages due plaintiff amount to $33,031.83. This figure includes $18,031.83 of rental expense tabulated on the basis of the contract price of $.07 per day per foot for 5270 feet of pipe over a 47-day period. The remaining $15,000.00 represents other damages incurred by plaintiff, including but not limited to (1) labor, equipment use and other expenses incurred in recovering the pipe, breaking it down and transporting it back to Corpus Christi; (2) testing and drifting the pipe; (3) straightening bent pipe, replacing damaged collars and rethreading damaged pipe ends; (4) the replacement cost of pipe damaged beyond repair as well as the above-mentioned loss incurred as a result of downgrading repaired pipe. Although these figures total approximately $20,000.00, the Court has subtracted $5,000.00 as an estimate of the expense of reasonable wear and tear which, pursuant to the terms and conditions stated in Plaintiff's Exhibit 4, plaintiff agreed to assume.

Defendants failed to produce any evidence as to what dollar amount represents reasonable wear and tear, and the Court has therefore selected the sum of $5,000.00 as a reasonable figure under the facts and circumstances presented.

10. In arriving at the above-mentioned findings of fact, the Court has taken into consideration the credibility and demeanor of the witnesses and, where appropriate, given them appropriate weight.

## CONCLUSIONS OF LAW

1. This is a case of admiralty and maritime jurisdiction under Rule 9(h), Fed.R. Civ.P.

2. Defendant Trefalcon failed to answer or appear at trial and is therefore in default. Accordingly, plaintiff is awarded damages against Trefalcon in the amount of $33,031.83. *See* Finding of Fact 8.

Although plaintiff prays for punitive damages against Trefalcon for fraud arising out of alleged misrepresentation of Trefalcon's financial condition, the Court concludes that the evidence does not support such an award. Accordingly, plaintiff is awarded only actual damages against Trefalcon. In addition, defendant Franconia is entitled to default judgment on its third-party complaint brought against Trefalcon pursuant to an arbitration award ordering Trefalcon to pay Franconia for any losses sustained as a result of this lawsuit.

3. As stated in Finding of Fact 6, the Court finds that Pacific disclosed its agency relationship with Trefalcon to plaintiff at the outset of its course of dealing with plaintiff. Accordingly, plaintiff is not entitled to recover from Pacific the damages sustained as a result of the breach of contract.

4. Plaintiff contends, and the Court concludes, that the rental of the pipe to Trefalcon creates a lien in its favor against the GEORGE VERGOTTIS pursuant to 46 U.S.C.A. § 971 which provides:

"Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel."

There is no prohibition of lien clause in the charter agreement between Trefalcon and Franconia, *see* Defendant's Exhibit 9, and the law is clear that a charterer can create a lien against a vessel that it has chartered. *Dampskibsselskabet Dannebrog v. Signal Oil & Gas Company of California,* 310 U.S. 268, 60 S.Ct. 937, 84 L.Ed. 1197 (1940). Thus, the key issue raised by Franconia is whether the pipe constitutes "other necessaries" within the meaning of the Lien Act. Counsel acknowledge that this is a question of first impression without closely analogous precedent.

Defendant Franconia Sea Transport urges the applicability of *J. Ray McDermott & Co. v. The Off-Shore Menhaden Company,* 262 F.2d 523 (5th Cir. 1959), wherein Chief Judge John R. Brown held that a lien was not created in favor of the claimant for the cost of dredging a slip for use as a permanent berth. The capital nature of the facility led the court to conclude that it should not come within the purview of the Lien Act, for to do so would open the door to claims that the costs of constructing wharves, docks, warehouse sheds and other permanent capital improvements may also be the subject of maritime liens. In so ruling, however, the court strongly emphasized the liberal construction to be given the Lien Act:

"We approach the problem as we have before with no niggardly begrudging interpretation of 'other necessaries.' For 'we think the statutory words "other necessaries" should not be narrowly interpreted as was done in cases like *The J. Doherty* (D.C., 207 F. 997), *The Hatteras,* supra (2 Cir., 255 F. 518), *The Muskegon,* 2 Cir., 275 F. 348, *The Suelco,* D.C., 286 F. 286, but that they should be given a broad meaning, as they were in *The Rupert City,* D.C., 213 F. 263, and *The Henry S. Grove,* D.C., 285 F. 60, and held to include maritime services generally, at least in so far as port charges are concerned, whether such services consist of the furnishing of labor or material.' *The Western Wave,* 5 Cir., 1935, 77 F.2d 695, 698, 1935 A.M.C. 985, certiorari denied sub nom. *Board of Commissioners of the Port of New Orleans v. North American Fruit & Steamship Corp.,* 296 U.S. 633, 56 S.Ct. 156, 80 L.Ed. 450, 1935 A.M.C. 1444. See also Griffin, The Federal Maritime Line Act, 37 Harv.L.Rev. 15 (1923), reprinted 1924 A.M.C. 206, and Gilmore & Black, Admiralty 542–43 (1957)."

*Id.* at 525. The court went on to note that such a liberal construction may "frequently lead to the allowance of maritime liens to new and infrequent situations". *Id.*

While plaintiff concedes the absence of case authority directly on point, it urges that the prevailing broad meaning given the phrase "other necessaries" and the reasoning behind the act combine to compel the conclusion that a lien exists in the instant case. In support of this position, plaintiff urges that the pipe rental is analogous to stevedoring services which may form the basis for a maritime lien. *Nacirema Operating Co., Inc. v. S. S. Al Kulsum,* 407 F.Supp. 1222 (S.D.N.Y.1975). After analyzing the briefs submitted by the parties and the relevant treatises and case authority, the Court concludes that the rental of oil pipe in the present case does come within the meaning of the term "other necessaries" and may give rise to a maritime lien.

■ While the Lien Act has in the past been strictly construed so as to avoid the creation of a lien, "the present state of the law is not far from the point where any service which is 'convenient, useful and at times necessary' may qualify as a lien under the Lien Act." G. Gilmore & C. Black, The Law of Admiralty §58 (2nd ed. 1975). Thus, "other necessaries" has been defined to include "those items or services which a prudent owner or master would deem to be

reasonably required to facilitate the use of the ship, save her from danger and enable her to perform those acts currently demanded of her . . . . [T]he furnished goals and services must be reasonably needed for the venture in which the ship is engaged." 2 I. Hall, A. Sann & S. Bellman, Benedict on Admiralty 3–27 (7th ed. 1975).

Application of this definition to the facts of the present case indicates that the furnishing of oil pipe was reasonably required to facilitate the vessel's mission. The unrebutted testimony at trial revealed that the only feasible means of loading the oil was through the use of a pipeline. Thus, the creation of a lien to cover the cost of the renting of the pipe to defendant Trefalcon is consistent with the purpose of the Lien Act—"to keep the ship active, thereby facilitating the flow of commerce and protecting the interests of the owners and secured parties". *Payne v. SS Tropic Breeze*, 423 F.2d 236, 241 (1st Cir. 1970). In *Payne* the court went so far as to hold that travel expenses incurred by the master in attempting to secure funds from the owner constituted "other necessaries".

■ This Court concludes that the facts of this case are clearly distinguishable from *J. Ray McDermott & Co. v. The Off-Shore Menhaden Company* in that the pipe rental in the instant case was not in the nature of a permanent capital improvement as was the permanent slip dredged in *J. Ray McDermott.* The short duration of the rental agreement coupled with the temporary manner in which the pipeline was strung indicate that the clear intent of all the parties was a short-term rental designed to effectuate the loading of the vessel on this one-time basis. Thus, the fear expressed by Chief Judge John R. Brown that the allowance of a lien in *J. Ray McDermott* might set a dangerous precedent for the creation of liens in a multitude of situations where capital improvements are made to ports is not applicable to the instant case, which instead fits the category of cases in which the proper application of the Lien Act leads "to the allowance of maritime liens to new and infrequent situa-

tions". Accordingly, plaintiff is entitled to a lien against the GEORGE VERGOTTIS in the amount of $33,031.83, representing the damages sustained by plaintiff. *See* Finding of Fact 8. This liability is joint and several with the liability of Trefalcon. *See* Conclusion of Law 2.

■ 5. The Court has considered defendant Franconia Sea Transport Ltd.'s argument that plaintiff waived any lien it might have had through its course of dealings with Pacific Corporation and concludes that no waiver occurred. By invoicing the pipe rental to Pacific, Franconia contends that plaintiff evidenced an intent to look elsewhere for security, thereby waiving any lien it might have had against the vessel. Franconia cites *John T. Clark v. S. S. Al Kulsum*, 1974 A.M.C. 1489 (S.D.N.Y.1974), as authority for this proposition. In this case the court held that John T. Clark & Sons, a stevedoring company, waived any lien it had against the vessel resulting from the performance of stevedoring services by virtue of its course of dealing with Nervis, the general agent of United, the charterer.

Plaintiff argues, and the Court agrees, that the facts of *John T. Clark* are distinguishable from the instant case. From the outset in *John T. Clark* the negotiations for the performance of the stevedoring services took place solely with the agent, the contract was entered into with the agent based on its background and without any participation by the charterer and a condition of the contract was the prepayment by the agent of 40 percent of the total bill. In the present case, as noted in Finding of Fact 6, the negotiations and consummation of the contract took place between plaintiff and Trefalcon. Unlike *John T. Clark* where the agent single-handedly implemented the contract, Pacific entered the picture only after the terms and conditions of the rental had been agreed upon, and Trefalcon instructed plaintiff to bill them through their general agent. Although plaintiff seeks to hold Pacific liable for the contract price as agent for an undisclosed principal, the Court finds, as stated in Finding of Fact 6, that the agency relationship was disclosed from

the outset. Thus, the mere act of following Trefalcon's invoicing instructions should not be equated to the clear and consistent actions of the stevedore in *John T. Clark.*

Even if the instant case were not distinguishable on its facts from *John T. Clark*, there is at least one court which has concluded that *John T. Clark* was wrongly decided. In *Nacirema Operating Co., Inc. v. S.S. Al Kulsum*, 407 F.Supp. 1222 (S.D.N.Y. 1975), the court was faced with a fact situation which it acknowledged was indistinguishable from *John T. Clark*; yet it concluded that no waiver had occurred. It criticized *John T. Clark's* reliance on the Supreme Court decision in *Marshall & Co. v. The President Arthur*, 279 U.S. 564, 49 S.Ct. 420, 73 L.Ed. 846 (1929), on the grounds that in *Marshall* the plaintiff obtained from the owner of the ship special trade acceptances guaranteed by third parties before agreeing to supply the ship with coal, thereby evidencing a clear intent to look elsewhere for security. In *John T. Clark* and *Nacirema* there was no such special security sought or obtained. In addition, the court in *Nacirema* noted that the 1971 amendments to the Federal Maritime Lien Act eliminated the provisions requiring the supplier to ascertain that the operator of the ship had authority to create a lien as a prerequisite to the assertion of a lien. After quoting at length from the legislative history of the amendments, the court concluded that Congress intended to favor the supplier of goods and services over the owner when the charterer or agent is unable to pay. Thus, stated the court:

> "We cannot agree with the implication in the *Clarke* [sic] case that the stevedore must by his conduct show an intention to retain the maritime lien. Rather the relevant question is whether the stevedore has clearly manifested an intention to forego the lien in favor of some other security."

407 F.Supp. at 1226.

Since, as above-stated, the facts of the instant action present a much less compelling case for the finding of waiver than did *John T. Clark* or *Nacirema*, this Court need not decide whether the strict construction of waiver adopted by the *Nacirema* court in this context is the proper test. Nonetheless, the Court notes that such a construction is consistent with the recent trend towards a narrow construction of waiver in other contexts such as waiver by the extension of credit to the owner where one authority notes,

> "In recent years . . . the material men have fared well against charges of waiver of lien by extension of credit to the owner even when they have not meticulously observed the desirable formalities."

Gilmore & Black at 667. *Point Landing, Inc. v. Alabama Dry Dock & Shipbuilding Co.*, 261 F.2d 861 (5th Cir. 1958), *Rainbow Line, Inc. v. M/V Tequila*, 341 F.Supp. 459 (S.D.N.Y.1972), *aff'd*, 480 F.2d 1024. Accordingly, the Court concludes that plaintiff's course of dealing with Pacific does not constitute a waiver of its lien against the vessel.

6. The Court concludes that plaintiff is not entitled to recover attorney's fees from defendant Franconia pursuant to Tex.Rev.Civ.Stat.Ann. art. 2226 (1978). Plaintiff acknowledges that prior to the 1971 amendments, it was consistently held that the Art. 2226 provision for the recovery of attorney's fees did not apply to in rem proceedings under 46 U.S.C.A. § 971. *Allen v. The M/V Contessa*, 196 F.Supp. 649 (S.D.Tex.1961). Nonetheless, plaintiff urges that the 1971 amendment to Art. 2226 which deleted the word "personal" preceding "services" broadens the types of situations in which attorney's fees are recoverable and now encompasses the recovery in the instant case. Plaintiff has not presented any convincing authority for such an extension, and this Court concludes that the mere deletion of the word "personal" from Art. 2226 does not alter the rule that Art. 2226 does not apply to in rem proceedings brought pursuant to 46 U.S.C.A. § 971. Accordingly, plaintiff is not entitled to recover attorney's fees from defendant Franconia Sea Transport.

7. In the event that any of the foregoing Findings of Fact also constitute Conclusions of Law, they are also adopted as Conclusions of Law. In the event that any of the foregoing Conclusions of Law also constitute Findings of Fact, they are also adopted as Findings of Fact.