United States Court of Appeals,

Fifth Circuit.

No. 96-30583.

TRICO MARINE OPERATORS, INC., Plaintiff-Appellee,

v.

FALCON DRILLING COMPANY, Defendant,

Falrig Offshore Limited, Defendant-Appellant,

Falrig 18, Mobile Offshore Drilling Unit, Movant-Appellant.

June 30, 1997.

Appeals from the United States District Court for the Eastern District of Louisiana.

Before W. EUGENE DAVIS, STEWART and PARKER, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

This appeal presents the question of whether the appellee is entitled to a maritime lien for its supply boat services it provided to an offshore drilling vessel. We agree with the district court that appellee is entitled to a lien. We therefore affirm.

I.

In October 1992, Century Offshore Management Corporation (Century) entered into a "Daywork Drilling Contract" (Contract) with Falcon Drilling Company (Falcon) which provided in part for Century's use of the drilling vessel, FALRIG 18. The FALRIG 18 was owned by Falrig Offshore Limited (Falrig) and operated by Falcon. The contract, in addition to providing for Century's use of the FALRIG 18, included passages defining the responsibilities of the two parties while the vessel was engaged in prospecting for oil in

the Gulf of Mexico. Century agreed to pay Falcon $15,000 per day for the use of the vessel with crew. Century personnel, however, provided general supervision to the crew, such as directing the vessel where to prospect for oil. The contract also delineated the necessary equipment and supplies each party was obliged to provide for the operation of the vessel. For example, Century was required to provide drinking water for the crew, fuel for the drilling vessel, and the materials essential for drilling operations such as pipe casing and drilling fluids. Century was also required to provide vessels to transport the equipment and supplies to the FALRIG 18 in the Gulf of Mexico.

Century contracted with appellee Trico Marine Operators Inc. (Trico) to furnish supply boats to transport supplies and equipment to the FALRIG 18 while she was drilling in the Gulf of Mexico. Trico provided either the M/V JAMES RIVER or the M/V BIG HORN RIVER under a time charter to Century to perform these services. These vessels transported equipment and supplies to sustain the crew of the FALRIG 18 and support the vessels's drilling activities. Trico billed Century for the service of the JAMES RIVER and BIG HORN RIVER. Century owed Trico for these services when Century filed a Chapter 11 bankruptcy proceeding. In addition to asserting a claim in Century's bankruptcy proceeding, Trico asserted an *in rem* claim against the FALRIG 18. Falcon challenged Trico's right to a maritime lien on the vessel. The district court overruled Falcon's objection and recognized Trico's maritime lien. This appeal followed.

II.

A.

Under the Maritime Lien Act (the "Act"), a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner (*1* ) has a maritime lien on the vessel; (2) may bring a civil action *in rem* to enforce the lien; and (3) is not required to allege or prove that credit was given to the vessel. 46 U.S.C. § 31342(a)(Supp.1997). The Act also provides that in addition to the vessel owner, the master or the person entrusted with the management of the vessel at the port of supply, an officer or agent appointed by the owner or a "charterer" of a vessel is presumed to have authority to procure necessaries for the vessel. 46 U.S.C. § 31341 (Supp.1997).

In order to determine whether Trico is entitled to a maritime lien for its supply boat services that it provided to the FALRIG 18, we must resolve two questions: (*1* ) whether Century was authorized by the owner of the FALRIG 18 to engage the services of Trico's supply vessels; and, (2) if so, whether the services Trico provided were "necessaries" within the meaning of the Act.

B.

As indicated above, the Act provides that a "charterer" is presumed to have authority to procure necessaries for a vessel. We first consider therefore whether Century is a "charterer" of the FALRIG 18 within the meaning of the Act.

The Act does not define "charterer." This court, however, has described a charter as "an arrangement where one person (the

3

"charterer') becomes entitled to the use of the whole of a vessel belonging to another (the "owner')."[1] Our definition is consistent with that of the leading commentators. See e.g., Thomas J. Schoenbaum, *Admiralty & Maritime Law* § 11-1 at 169 (2d Ed.1994)(defining a charter party as a "specialized form of contract for the hire of an entire ship.... The Party that obtains the use and service of the ship is called the charterer or shipper...."); Grant Gilmore and Charles L. Black, *The Law of Admiralty* § 4-1 (2d ed.1975)(defining charter as the "document in which are set forth the arrangements and contractual engagements entered into when one person ("the charterer') takes over the *use* of the whole of a ship belonging to another (the "owner')"). Based in part on these definitions of charter, the district court concluded that Century was a charterer of the FALRIG 18 and therefore had presumed authority to procure necessaries from Trico for the vessel. We agree.

Under the terms of the Contract, Falrig, through Falcon, provided the drilling vessel FALRIG 18 together with the crew and equipment to Century at an operating rate of $15,000 per day. Falcon agreed to furnish the rig for the drilling of one well and granted an option to Century for the use of the rig for drilling an additional well. In *Fontenot v. Mesa Petroleum Co.,* 791 F.2d 1207 (5th Cir.1986), we characterized a similar contract for the use of a drilling vessel as a "charter agreement for a vessel" and described the parties to that agreement as rig owner and rig

---

[1]*Walker v. Braus,* 995 F.2d 77, 80 (5th Cir.1993).

charterer.  *Id.* at 1209, 1214.  See also *Lewis v. Keyes 303,* 834 F.Supp. 191, 195 (S.D.Tex.1993)(holding that a "Daywork Drilling Contract" was an charter agreement because it provided that Union Oil would have use of a drilling vessel belonging to another, Marine Drilling Company).

Falrig argues that Century cannot be characterized as a "charterer" for purposes of the Act because Falcon's arrangement with Century is neither a time, voyage, nor bareboat charter.  We do not address the merits of this argument, however, because the Act attaches no significance to the specific type of charter agreement entered into by the parties.  As indicated above, the Act simply provides that a "charterer" is presumed to have authority to procure necessaries for the vessel.  Century, by contracting to use a vessel, FALRIG 18, belonging to another, satisfies the definition of a charterer;  as a result, Century is presumed under the Act to have authority to procure necessaries for the FALRIG 18.[2]

## C.

We turn now to the question of whether the supply boat services provided by Trico were "necessaries" under the Act. As stated above, those supplies included drinking water and food for the crew as well as drilling equipment and supplies to support the drilling activities conducted by the vessel.  The Act gives an illustrative list of goods and services that are necessaries, including "repairs, supplies, towage, ... or any other necessaries,

---

[2]No language in the contract purports to preclude Century from incurring a lien.

5

to any vessel...."  46 U.S.C. § 31301(4).  In *Equilease v. M/V SAMPSON,* 793 F.2d 598, 603 (5th Cir.1986)(en banc), this court explained that necessaries include "most goods or services that are useful to the vessel, keep her out of danger and enable her to perform her particular function."  *Id.* See e.g., *Farrell Ocean Services, Inc. v. U.S.,* 681 F.2d 91, 93 (1st Cir.1982)(holding that Carriage of one vessel by another is a necessary);  *Port Ship Service, Inc. v. Int'l Ship Management & Agencies Service, Inc.,* 800 F.2d 1418, 1421 (5th Cir.1986)(holding that water taxi services give rise to a lien).

We agree with the district court that Trico's services of transporting the supplies and equipment which were essential to sustain the crew and operations aboard the FALRIG 18 were necessaries.  See *Equilease,* 793 F.2d at 604(stating that since "insurance is essential to keep a vessel in commerce, insurance is a "necessary' " under the Act).

III.

In sum, we conclude that Century was a charterer of the FALRIG 18 and thus had presumed authority under the Maritime Lien Act to procure necessaries for the vessel.  We also conclude that Trico's supply boat services were necessaries under the Act. We therefore hold that Trico is entitled to a lien on the FALRIG 18 for these services under 46 U.S.C. § 31342(a)(1) of the Maritime Lien Act. The district court's order is accordingly affirmed.

AFFIRMED.

6