# United States Court of Appeals
## For the First Circuit

No. 16-2467

PORTLAND PILOTS, INC.; WORLD FUEL SERVICES, INC.,
d/b/a Trans-Tec; SPRAGUE OPERATING RESOURCES, LLC; BROWN SHIP
SERVICES; CITY OF PORTLAND; PORTLAND DEVELOPMENT CORPORATION;
COCKETT MARINE OIL DMCC; MCCALLISTER TOWING AND TRANSPORTATION
COMPANY INC., d/b/a Portland Tugboat LLC; DNV GL AS,

Plaintiffs,

MAINE UNIFORM RENTAL, INC., d/b/a Pratt Abbott Uniform & Linen,

Plaintiff, Appellant,

v.

NOVA STAR M/V, in rem,

Defendant, Appellee,

NOVA STAR CRUISES LTD, in personam; SINGAPORE TECHNOLOGIES
MARINE LIMITED, quasi in rem; BUNKERS AND RELATED FUEL ABOARD
THE M/V NOVA STAR, in rem,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE
[Hon. D. Brock Hornby, U.S. District Judge]

Before
Howard, Chief Judge,
Torruella and Barron, Circuit Judges.

Robert W. Kline, with whom Kline Law Offices LLC was on brief,
for appellant.
Edward S. MacColl, with whom Thompson, MacColl & Bass, LLC,
P.A. was on brief, for appellee.

November 7, 2017

**TORRUELLA**, **Circuit Judge**.  We have before us an appeal from the district court's judgment limiting the in rem maritime lien claim of Plaintiff-Appellant Maine Uniform Rental, Inc., d/b/a Pratt Abbott Uniform & Linen ("Pratt Abbott" or "Appellant") on the arrested ship, the M/V NOVA STAR ("NOVA STAR").  Pratt Abbott's claim arises from its agreement (the "Agreement") with the ship's charterer, Nova Star Cruises Limited ("Nova Star Cruises"), to rent linens and other related items for the ship's ferry service.  Given this case's maritime and admiralty nature,[1] and the need to interpret the Federal Maritime Lien Act[2] (FMLA) to reach a resolution, this case was properly before the district court.  28 U.S.C. § 1331.  This Court has appellate jurisdiction of that district court's final decisions, 28 U.S.C. § 1291, and the case is now properly before us.

We are asked to extend the reach of a maritime lien claim to encompass a pre-established purchase cost of items rented by a charterer pursuant to a temporary rental and service contract.

---

[1]  28 U.S.C. § 1333.

[2]  46 U.S.C. §§ 31301-31343.  Section 31343 provides that "[t]he district courts of the United States shall have jurisdiction over a civil action in Admiralty to declare that a vessel is not subject to a lien claimed under [the Maritime Lien Act], or that the vessel is not subject to the notice of claim of lien, or both, regardless of the amount in controversy or the citizenship of the parties."

-3-

After review of the record and the parties' arguments, we refrain from doing so and affirm the judgment of the district court.

## I. BACKGROUND

### A. Setting Sail (The Facts)

Given that neither party claims to challenge the court's factual findings, we draw the facts from the district court's findings, filling in undisputed facts from the record as necessary to the analysis.

In 2013, Singapore Technologies Marine Ltd. ("ST Marine"), owner of the NOVA STAR, and Quest Navigation, Inc. ("Quest") entered into a joint venture to operate a ferry service between Yarmouth, Nova Scotia, and Portland, Maine. Together, ST Marine and Quest incorporated Nova Star Cruises in Nova Scotia to operate the ferry service, and Nova Star Cruises chartered the NOVA STAR. The plan was to turn the NOVA STAR into a floating hotel that cruised between Yarmouth and Portland.

Appellant is a Maine corporation in the business of supplying linens, uniforms, mats, rugs, towels, and related items to large customers, such as hotels, restaurants, medical establishments, and auto dealerships. The relationship between Nova Star Cruises and Pratt Abbott began when Nova Star Cruises reached out to Pratt Abbott asking if it would be interested in

-4-

supplying linens[3] for the NOVA STAR.  While the general practice in the hotel industry is to have customers purchase their own goods with the supplier processing (wash, dry, fold, press, etc.) and returning them, Pratt Abbott offered Nova Star Cruises the option of renting the linens to reduce its upfront expenses.  Nova Star Cruises opted for the rental option.  In April 2014, Nova Star Cruises entered into the Agreement with Pratt Abbott, agreeing to rent linens over a five-year period.  The Agreement included a clause that stated:

> If the contract is terminated prior to the expiration date, [Nova Star Cruises] agrees to promptly purchase all merchandise that has been ordered for or put into service for [Nova Star Cruises] at [Pratt Abbott's] then current published replacement rate schedule (this agreed sale of all merchandise is in recognition of the substantial investment of [Pratt Abbott] including, but not limited to merchandise, equipment, labor, energy, transportation and future planning).

Before finalizing the Agreement, Nova Star Cruises paid Pratt Abbott a deposit of $51,536.45 and filled out a credit application through Pratt Abbott.  On this application, Nova Star Cruises provided its bank account information at the Bank of Nova Scotia.

Pratt Abbott purchased specific items in large quantities to meet Nova Star Cruises's needs pursuant to the

---

[3]  As did the district court, we use this term to encompass everything that Pratt Abbott supplied to the NOVA STAR for use under the Agreement, including towels, linens, carts, napkins, etc.

contract, such as special linen carts that could maneuver around tight spaces on the vessel, bed sheets, table linens, and napkins. Some of these linen products, such as the table cloths, were uniquely shaped to meet the needs of the NOVA STAR. Pratt Abbott also purchased new equipment that it would not have purchased otherwise in order to meet the needs of the rental contract. Under the contract, Pratt Abbott maintained ownership of all these linens and specialty items.

At the end of the 2015 ferry season, Nova Star Cruises asked that Pratt Abbott leave specific items onboard the NOVA STAR. Pratt Abbott did so and sent Nova Star Cruises an invoice for the cost of the items. That same year, Nova Star Cruises terminated the ferry service after just two seasons. Upon realizing that the Agreement was, in effect, terminated, Pratt Abbott demanded that Nova Star Cruises purchase the inventory of linens pursuant to the Agreement and pay past-due invoices. The unpaid invoices totaled $16,187.50 for the last completed rental service and regular cleaning ($12,558.21), the items that Nova Star Cruises requested remain on the ship ($3,223.29), and the specialty items that were cleaned and returned to the ship prior to its arrest ($406). Nova Star Cruises ignored Pratt Abbott's requests for payment. The inventory of linens that Pratt Abbott had purchased for use on the NOVA STAR remains in Pratt Abbott's warehouse in Westbrook, Maine.

The total replacement cost of the stored inventory under the Agreement is $178,023.02.[4]

## B. Steering the Course (Procedural History)

A number of creditors asserted maritime liens against the NOVA STAR in the U.S. District Court for the District of Maine, and the district court issued several warrants for the ship's arrest. On November 17, 2015, Pratt Abbott filed a motion to intervene, asserting its own maritime lien against the arrested vessel for the replacement cost of the stored inventory and the balance of unpaid invoices. A week later, Pratt Abbott also filed a verified complaint against the vessel and Nova Star Cruises for the same amount, alleging breach of contract, unjust enrichment, and quantum meruit. In its in rem action, Appellant initially claimed a lien in the amount of $262,001.50, but this claim has since been reduced to $194,510.12 ($16,187.50 for the unpaid invoices, and $178,023.02 for its stored inventory). On

---

[4] Pratt Abbott alleges that the district court found the "cost" of the stored inventory, and therefore its "value," to be $178,023.02. But Pratt Abbott ignores the qualifier in the district court's finding. The district court found the "replacement cost" of the inventory "under the contract" to be this amount. This did not reflect the cost to Pratt Abbott of the stored inventory, but rather the "replacement cost," or purchase price in the event of contractual breach, established by Pratt Abbott's replacement rate schedule. Our reference to the "replacement cost" throughout this opinion reflects the established purchase price of the stored inventory in the Agreement.

November 30, 2015, the district court granted ST Marine's motion to substitute the vessel for a bond.

The district court held a one-witness bench trial on Pratt Abbott's maritime lien claim on August 24, 2016. At the conclusion, the district court found that the supplies and services that Pratt Abbott had provided to the NOVA STAR under the Agreement, allowing the ship to operate as a mobile hotel, constituted "necessaries"[5] under maritime law. However, the court found that the lien did not extend to the period after the arrest, when the rental items were no longer being used by the NOVA STAR. Additionally, the court found that only the rental and cleaning services provided by Pratt Abbott before the service ceased at the end of the 2015 season, the specialized items that Nova Star Cruises requested remain with the ship, and the specialty items that were cleaned and returned to the ship had been provided or "delivered" for purposes of the maritime lien requirement. See Cianbro Corp. v. George H. Dean, Inc., 596 F.3d 10, 14-15 (1st Cir. 2010); see also Piedmont & George's Creek Coal Co. v. Seaboard Fisheries Co., 254 U.S. 1, 6-7 (1920). The district court denied Pratt Abbott's claim for the replacement cost of the inventory remaining in its Maine warehouse, stating that those physical items

_____

[5]   46 U.S.C. § 31301(4).

-8-

had not been furnished to the ship.  The district court entered judgment for Pratt Abbott on September 7, 2016, for the unpaid invoice amount of $16,187.50.  Me. Unif. Rental, Inc. v. M/V Nova Star, No. 2:15-cv-442-DBH (D. Me. Sept. 7, 2016).  This appeal ensued.

## II.  DISCUSSION

### A.  Rules of Engagement (Standard of Review)

As this appeal arises following a bench trial, we review "the [district] court's factual determinations for clear error and its legal conclusions de novo."  Ne. Drilling, Inc. v. Inner Space Servs., Inc., 243 F.3d 25, 37 (1st Cir. 2001); accord Commercial Union Ins. Co. v. Seven Provinces Ins. Co., 217 F.3d 33, 40 (1st Cir. 2000).  We adopt the district court's findings of fact "unless we are left with the definite and firm conviction that a mistake has been committed."  Vinick v. United States, 205 F.3d 1, 6 (1st Cir. 2000) (citation and internal quotation marks omitted).

Pratt Abbott claims to agree with all of the district court's factual findings and appeals only the legal conclusions, yet asserts facts in its brief beyond those found below.  In light of Pratt Abbott's pronouncement that it does not dispute the district court's factual findings and appeals only the court's legal conclusions, we review the legal conclusions only, and do so de novo.

## B. Navigating the Waters (Analysis)

Appellant argues that the district court erred when it refused to grant Appellant's maritime lien claim in its entirety. The purpose of a maritime lien is two-fold: first, to allow ships to continue to function for their intended purpose, and second, to hold the ship -- rather than its owner -- liable for its debts. Equilease Corp. v. M/V Sampson, 793 F.2d 598, 602 (5th Cir. 1986) (en banc) ("The maritime lien concept thus somewhat personifies a vessel as an entity with potential liabilities independent and apart from the personal liability of its owner."). "The overarching goal is keeping the channels of maritime commerce open-by ensuring that people who service vessels have an efficient way of demanding reimbursement for their labor and are thus willing to perform the services necessary to keep vessels in operation." Mullane v. Chambers, 438 F.3d 132, 138 (1st Cir. 2006); see Atl. & Gulf Stevedores, Inc. v. M/V Grand Loyalty, 608 F.2d 197, 201 (5th Cir. 1979) ("[I]t was the intent of the Congress to make it easier and more certain for stevedores and others to protect their interests by making maritime liens available where traditional services are routinely rendered.").

However, as such liens are believed to "encumber commerce," People's Ferry Co. v. Beers, 61 U.S. (20 How.) 393, 401 (1857); Cianbro, 596 F.3d at 14 ("Because a maritime lien is deemed

to encumber commerce, it is disfavored in the law . . . ." (internal quotation marks and citation omitted)), the requirements for the allowance of a maritime lien are construed <u>stricti juris</u>. <u>Tramp Oil & Marine, Ltd.</u> v. <u>M/V "Mermaid I"</u>, 805 F.2d 42, 46 (1st Cir. 1986). As advised by the Supreme Court, such liens must not be extended by "construction, analogy, or inference." <u>Osaka Shosen Kaisha</u> v. <u>Pac. Exp. Lumber Co.</u>, 260 U.S. 490, 497 (1923).

To establish a maritime lien on a vessel, a claimant must show that it provided "necessaries" to the vessel[6] at the order of the vessel's owner or a person authorized by the owner, including a "charterer." <u>Cianbro</u>, 596 F.3d at 14 (quoting 46 U.S.C. § 31341). Thus, although the in rem claim asserted by Pratt Abbott bears no particular relation to the NOVA STAR <u>qua</u> a ship, and arises as a result of a default purchase provision in the Agreement, Appellant may still be entitled to a maritime lien by showing that it provided items that were "necessary" to the ship's intended purpose. 46 U.S.C. § 31342; <u>see</u> <u>Equilease</u>, 793 F.2d at 602.

**1. The rental and cleaning services of the inventory were "necessaries"**

"'[N]ecessaries' includes repairs, supplies, towage, and the use of a dry dock or marine railway," 46 U.S.C. § 31301(4), as

---

[6] 46 U.S.C. § 31342(a).

well as "most goods or services that are useful to the vessel, keep her out of danger and enable her to perform her particular function." Trico Marine Operators, Inc. v. Falcon Drilling Co., 116 F.3d 159, 162 (5th Cir. 1997) (quoting Equilease, 793 F.2d at 603); see Farrell Ocean Servs., Inc. v. United States, 681 F.2d 91, 92-93 (1st Cir. 1982). "It is the present, apparent want of the vessel . . . which makes it a necessary." Equilease, 793 F.2d at 603 (quoting 2 Benedict on Admiralty § 34 (7th ed. 1984)).

Consistent with the FMLA's goal of affording financial protection to those who provide vessels with required services and provisions, courts have broadly interpreted what constitutes "necessaries" under the Act. See Farrell Ocean Servs., 681 F.2d at 92 (interpreting Section 971, from which Section 31301 was derived, and finding "'other necessaries' [as used in Section 971] should be interpreted broadly in order to encourage the provision of services that will keep ships active . . . ."); see, e.g., Trico Marine Operators, 116 F.3d at 162 (transportation of drinking water, food, drilling equipment, and supplies constituted "necessaries"); Port Ship Serv., Inc. v. Int'l Ship Mgmt. & Agencies Serv., Inc., 800 F.2d 1418, 1421 (5th Cir. 1986) (water taxi service to and from vessel may give rise to a maritime lien); Equilease, 793 F.2d at 600 (finding that insurance is a "necessary" to keep a vessel in commerce, giving rise to a maritime lien);

-12-

Sec. Pac. Bank of Wash. v. September Morn, 754 F. Supp. 813, 814-15 (W.D. Wash. 1990) (services to secure, prepare, and file documents in connection with marine mortgages were "necessary"). But see, e.g., Bradford Marine, Inc. v. M/V Sea Falcon, 64 F.3d 585, 589-90 (11th Cir. 1995) (attorney's fees incurred by vessel repair company were not necessaries); James Creek Marina v. Vessel My Girls, 964 F. Supp. 20, 23 (D.D.C. 1997) (attorney's fees to enforce lien were not "necessaries"). To determine whether Pratt Abbott's services constituted "necessaries," we examine its role in enabling the vessel to continue in its intended function. See Farrell Ocean Servs., 681 F.2d at 92-93.

As the district court correctly noted, the Agreement specified two types of services that Pratt Abbott performed for Nova Star Cruises: the delivery and cleaning of the rental items, and the rental -- or use -- of the physical items themselves. The details of both of these services were laid out in the Agreement. The very first line of the Agreement states that the contract is for all of Nova Star Cruises's "rental requirements." The first page of the Agreement further states that the rental rates shall be increased at each anniversary of the Agreement and that merchandise worn out through normal wear will be replaced at no charge to Nova Star Cruises. The addendum to the contract lists the items to be rented, the rental rates, and the quantity of each

-13-

item being rented.  The Agreement also describes the delivery and cleaning services of the items that Appellant agreed to perform, stating that the rental items "will be furnished, cleaned and maintained exclusively by [Pratt Abbott]."  Thomas Gridley, General Manager of Pratt Abbott, testified at trial that this delivery and cleaning service included the processing of the linens being taken on and off the ship, including "soil counting, washing, drying, folding, pressing, packaging, staging, [and] shipping."

Having described the service performed by Pratt Abbott, we next look to the NOVA STAR's intended purpose to determine whether these services were "necessaries."  Trico Marine Operators, 116 F.3d at 162.  The intended function of the NOVA STAR was to operate a ferry service between Yarmouth, Nova Scotia, and Portland, Maine, serving as the functional equivalent of a mobile hotel.  Hotels, by their very nature, require clean linens, whether those linens are purchased by the hotel itself or rented and serviced by an outside contractor.  For the operation of this hotel, Pratt Abbott supplied the NOVA STAR with two changes of linen to be placed on board the ship for each roundtrip service to and from Nova Scotia.  Upon the ship's return to Portland, Pratt Abbott off-loaded the soiled linens and restocked the ship with two full sets of linens in preparation for the next ferry service. The ship operated seven days a week, with the inventory used by

the ship set up to be laundered and processed every two to three days.

There is little dispute that the rental items and services provided pursuant to the Agreement, both on the ship and at the processing facility, enabled the ship to serve as a hotel and were necessary to keep the ship's business afloat. See Dampskibsselskabet Dannebrog v. Signal Oil & Gas Co. of Cal., 310 U.S. 268, 280-281 (1940). The district court found as much and neither party has challenged this conclusion. Based upon our review, we agree with the district court that the two services that Pratt Abbott provided under the contract constituted "necessaries" during the time of the ship's operation.

**2. After termination of the Agreement, the rental and cleaning services were no longer "necessaries"**

In addressing the rental services, including the delivery and retrieval of the rental items from the ship, the district court found that

> Pratt Abbott cannot assert a maritime lien for rental services that it did not actually provide to the vessel. The lien extends to the period during which the rental items were actually necessaries but does not include the period after the arrest, when the rental items were no longer being used by the Nova Star.

Me Unif. Rental, 2016 WL 4681097, at *4. In light of this conclusion, the district court limited the maritime lien that it awarded to Appellant to the rental services rendered prior to the

-15-

ship's arrest. Inherent in its finding was that, after the ship's arrest, the rental items were no longer "necessaries" to the continued operation of the vessel.

Pratt Abbott postures that the district court conflated a claim for future rental charges with one for contract-supported replacement cost, and therefore denied a claim that Pratt Abbott did not assert. We disagree. Pratt Abbott asserted a maritime lien claim for the total replacement cost of the inventory in its warehouse, as well as the balance of unpaid invoices (for the rental and cleaning services already provided). In its motion to intervene, Pratt Abbott alleged that "[n]either Nova Star Cruises nor M/V Nova Star has fully paid for the linen rental and cleaning and merchandise," and included the cost of those services in the amount of the total asserted maritime lien. In its verified complaint, Pratt Abbott alleged that the financial benefit conferred on the NOVA STAR for unpaid services was $262,001.50. Given these claims, the district court properly tailored its legal conclusions to address whether a maritime lien is proper, and the amount thereof, for both of the "necessaries" that were purportedly furnished.

Once ferry operations ceased at the end of the 2015 season and the Agreement was terminated, the rental items ceased to be "necessaries" for the NOVA STAR's intended purpose. See

-16-

Itel Containers Int'l. Corp. v. Atlanttrafik Express Serv. Ltd., 781 F. Supp. 975, 986 (S.D.N.Y. 1991) ("Plaintiffs' rental charges, however, must be limited to the time period during which the [rental items] were actually 'necessaries.'"), rev'd on other grounds, 982 F.2d 765 (2d Cir. 1992); see, e.g., Patricia Hayes & Assocs., Inc. v. M/V BIG RED BOAT, II, No. 00-cv-6925, 2002 WL 1163555, at *8 (S.D.N.Y. May 31, 2002) (amusement games not necessary for vessel's care and preservation after its arrest, and therefore accrual of lien for lease payments for games terminated at ship's arrest).  Even before the ship's arrest, Nova Star Cruises had ceased the ship's function as a mobile hotel and the rental items in inventory were no longer being used.  Thus, Pratt Abbott cannot assert a lien for the use of these rental items, or the rental delivery, retrieval, and cleaning services beyond the date that the 2015 ferry season concluded.

**3. "Delivery" of the rental and cleaning services**

We are left to determine whether the rental items and cleaning services, which were "necessaries" only during the vessel's ferry operations, were "provided" or "delivered" to the ship during that time for purposes of a maritime lien.  Herein lies the heart of this dispute.

Appellant challenges the district court's findings that the items that remained in Pratt Abbott's inventory had not been

-17-

provided or "delivered" to the ship in a manner sufficient to establish a maritime lien. In rejecting this portion of Pratt Abbott's claim, the district court relied on the fact that, pursuant to the Agreement, Pratt Abbott continued to own the items in the warehouse. The district court reasoned that any previous movement of the items to and from the vessel was simply the rental and cleaning services for which the parties contracted, and not a "delivery" sufficient to establish a maritime lien for the replacement cost of the items. While Pratt Abbott may have had a breach of contract claim against Nova Star Cruises[7] for failing to purchase this inventory in accordance with the terms of the Agreement, the district court found this to be distinct from a maritime claim in rem for items that had been "delivered" to the vessel.

Pratt Abbott argues that the district court construed the term "delivered" too narrowly, contrary to precedent and public policy. Even though the linens were not onboard the ship at the time of its arrest and were not delivered that very day, they remained "necessaries" that had been "delivered" to the NOVA STAR on a consistent, rotating basis, allowing the ship to serve its

_____

[7] On June 15, 2016, Pratt Abbott filed a notice of dismissal of its in personam action against Nova Star Cruises, but preserved its in rem action against the vessel.

purpose. In furthering its public policy argument, Appellant avers that the district court's narrow interpretation runs afoul of FMLA's goal of protecting those who provide required provisions to vessels.

To establish that the "necessaries" have been provided or furnished to a vessel, the "necessaries" must be either physically delivered or "constructively dispatched to the vessel by the handing over of the supplies to the owner or the owner's authorized agent for use on a designated vessel." Cianbro, 596 F.3d at 14; see Piedmont, 254 U.S. at 6-10 (finding no maritime lien when coal delivered by a coal company was not directly delivered to any vessel, the company had no direct dealings with the officers of any vessel, and there were no invoices to the fleet or any vessel). Appellant urges this court to broadly interpret the term "delivered," as both the linens onboard at the time of arrest and the linens stored for future voyages were, at one point, physically delivered to the vessel. Appellant cites to the Fifth Circuit's decision in Equilease to support the notion that this Court should view "delivery" through a broad lens. 793 F.2d at 603 ("We find no persuasive reason to read the term 'furnishing' so narrowly as [to require a physical delivery to the vessel].").

We do not find the holding in Equilease to support the requested extension of the scope of maritime liens as asserted in

-19-

this case. The issue before the Equilease Court was whether an intangible item, insurance for the ship, could be "furnished" when no physical item had actually been delivered. Id. Here, there is no question that the entire stock of physical inventory had, at some point, been physically placed aboard the NOVA STAR. Furthermore, whereas the vessel insurance policies in Equilease were owned by the vessel charterer and insured the vessels, id. at 600, Pratt Abbott maintained ownership and full control of all of the inventory in question. During the period in which the rental items were "necessaries," Nova Star Cruises contracted for the use -- not ownership -- of the inventory stored at the Westbrook warehouse. As acknowledged at oral argument, Pratt Abbott remained free to do with the specific items in its inventory, each bedsheet, towel, napkin, or cart, as it pleased so long as it fulfilled its service obligations to the charterer.

Continued ownership, in itself, does not prevent a finding that rental items have been provided or "delivered" to a vessel. See Itel Containers, 781 F. Supp. at 982-84. Nonetheless, when necessary items have been rented or leased to a vessel's authorized agent, courts have consistently found that it is the use of the necessary item -- not the necessary item itself -- that has been furnished to the vessel, and have limited maritime liens to the accrued rental value, depreciation, cost of necessary

-20-

repairs, and replacement value of unrecoverable inventory. Id. at 986-87; see S.C. State Ports Auth. v. M/V Tyson Lykes, 67 F.3d 59, 61 (4th Cir. 1995) (finding lien for dockage and wharfage while loading and unloading containers); see also Total Safety US, Inc. v. Con-Dive, LLC, No. H-08-2782, 2009 WL 3673051, at *1 (S.D. Tex. Nov. 4, 2009) (finding maritime lien for the rental value of "required safety equipment"); Silver Star Enters., Inc. v. Saramacca M/V, Civ. A. No. 92-1297, 1994 WL 794721, at *1-3 (E.D. La. July 20, 1994) (finding maritime lien for full rental charges of containers used exclusively aboard the vessel and prorated rental charges for containers used occasionally), rev'd on other grounds, 82 F.3d 666 (5th Cir. 1996); Redcliffe Ams. Ltd v. M/V Tyson Lykes, 806 F. Supp. 69, 72-73 (D.S.C. 1992) (finding leased containers had been "furnished" to vessels in amount of unpaid monthly rental charges, plus repair and replacement charges), rev'd on other grounds, 996 F.2d 47 (4th Cir. 1993); Clubb Oil Tools, Inc. v. M/V George Vergottis, 460 F. Supp. 835, 837 (S.D. Tex. 1978) (finding maritime lien for rental expense, as well as costs for recovery, testing, repairing, and replacing damaged oil piping).

We have found no cases that extend this lien to include the replacement cost of inventory retained by the plaintiff after termination of a rental agreement, and Pratt Abbott cites none.

-21-

In light of the doctrine of stricti juris noted above, we find it unwise to extend the application of maritime liens to encompass Appellant's asserted claim. We find that the limitations noted in the preceding paragraph apply in this case.

Pratt Abbott attempts to characterize the Agreement as a "five-year lease back with charterer responsible for paying over time for the linens Pratt Abbott purchased." This characterization is contrary to the uncontested facts found by the district court and the plain language of the Agreement. As previously noted, the Agreement made it clear that this contract was a rental and servicing agreement. On these specific facts, even had Nova Star Cruises ultimately purchased the inventory according to the Agreement's default purchase clause, the obligation to purchase was triggered only in the event that the charterer breached the contract, at which time the linens were no longer "necessaries." Therefore, in this situation, no maritime lien would result from this default purchase clause.

### 4. Exclusive Use

Appellant further argues that, because the inventory in its Westbrook warehouse was purchased and earmarked for exclusive use on the NOVA STAR, and Pratt Abbott relied on the credit of the vessel in supplying these necessaries, the rental items themselves were provided to the vessel and created an enforceable maritime

-22-

lien. Pratt Abbott cites a host of cases[8] from varying federal circuits and the Supreme Court to support the proposition that setting aside necessaries for exclusive use by a specific vessel, unlike delivering them to a fleet of vessels for later distribution, creates an actionable in rem claim against that ship.

We need not address the merits of Appellant's argument as it is simply unsupported by the record. In its uncontested factual findings, the district court found that, in order to meet the Nova Star Cruises's needs under the contract, Pratt Abbott purchased certain specialty items in large quantities such as specialty linen carts, flat twin sheets, table napkins, and table cloths. The district court further found that, in order to meet the rental contract, Pratt Abbott purchased new equipment that it would not normally have purchased. Noticeably absent from the district court's findings is Appellant's proclamation that the inventory was purchased and earmarked exclusively for the vessel. After the district court issued its findings of fact and conclusions of law, Pratt Abbott filed a motion for additional

---

[8] Dampskibsselskabet Dannebrog, 310 U.S. 268; Piedmont, 254 U.S. 1; In re Container Applications Int'l, Inc., 233 F.3d 1361 (11th Cir. 2000); Rascal Survey U.S.A., Inc. v. M/V Count Fleet, 231 F.3d 183 (5th Cir. 2000); Silver Star Enters., Inc., 82 F.3d 666; Redcliffe Ams. Ltd., 996 F.2d 47; Bankers Tr. Co. v. Hudson River Day Line, 93 F.2d 457 (2d Cir. 1937).

findings, requesting that the district court make the following additional findings:

> 1. The [inventory] supplied by Pratt Abbott for the vessel and consisting of the specialty items in large quantities . . . were purchased exclusively for the vessel.
>
> . . .
>
> 4. This linen inventory was not used for any other customer, remains segregated, and was needed to meet the vessel's service requirements . . . .

ST Marine objected to the adoption of the additional findings, and the district court denied the motion. Given that the Appellant has conceded agreement to the court's factual findings, it cannot now assert facts outside of the record on appeal.

We agree with the district court that the items in inventory were not "delivered" to the ship in such a manner as to create a maritime lien for their replacement cost. The use of the rental items in inventory was part of the rental and cleaning service provided under the rental contract, and the district court properly awarded a lien for the amount owed for past services at the time of termination ($12,558.21). The district court also properly awarded a maritime lien for unrecoverable items remaining aboard the ship, including the items that Nova Star Cruises requested ($3,223.29), as well as the specialty items that were cleaned and returned to the ship ($406).

### III.  CONCLUSION

For the reasons stated above, the district court properly limited the maritime lien to the amount of $16,187.50. The district court correctly concluded that the inventory remaining in Pratt Abbott's warehouse in Westbrook, Maine, was not "delivered" in a manner as to create a maritime lien for its replacement cost according to the default provision of the rental contract.  Accordingly, the judgment of the district court is affirmed.

**Affirmed**.