United States Court of Appeals,

Fifth Circuit.

No. 94-30747.

SILVER STAR ENTERPRISES, INC., et al., Plaintiffs,

v.

SARAMACCA MV, her engines, tackle, apparel, etc., in rem, Defendants.

TRANS OCEAN LTD., Plaintiff-Appellee,

v.

SCHEEPVAART MAATSCHAPPIJ SURINAME N.V., et al., Defendants,

v.

SILVER STAR ENTERPRISES, INC., Appellant.

May 14, 1996.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before WISDOM, GARWOOD and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Plaintiff Silver Star Enterprises, Inc. (Silver Star), appeals the judgment of the district court granting Trans Ocean Ltd. (Trans Ocean), a lessor of cargo containers to a shipping company, a maritime lien in the vessel M/V SARAMACCA. Like three other circuit courts, we decline to extend coverage of the Federal Maritime Lien Act to bulk cargo container leases to entities other than "a vessel." Accordingly, we reverse. 1995 WL 16773.

## I. FACTS AND PROCEEDINGS BELOW

Scheepvaart Maatschappij Suriname N.V. (SMS), a corporate entity wholly owned by the Republic of Suriname, operated a

1

shipping container service from Suriname to the United States, particularly Houston and New Orleans, and Rotterdam. SMS owned or chartered eight different vessels, including the M/V SARAMACCA, on which appellant Silver Star held two preferred ship mortgages.

Beginning in May 1991, Appellee Trans Ocean began furnishing up to one hundred twenty-two cargo containers to the SMS fleet pursuant to a Master Container Lease. The lease set a per diem rental rate for each container and obliged SMS to pay repair costs and depreciated replacement values for damaged or lost containers. The lease did not "earmark" particular containers for service on particular SMS vessels and indeed left needed flexibility with SMS to deploy the containers. The lease did not prevent intermodal use of the containers in land or even air transport.

Barely a year later, Silver Star commenced an *in rem* action in Houston, Texas, to enforce its preferred ship mortgages against the M/V SARAMACCA. Trans Ocean then sued and claimed maritime lien rights arising from the lease of containers, including those used aboard the M/V SARAMACCA.[1] Ultimately, the M/V SARAMACCA was

---

[1] With certain exceptions, foreign sovereigns, such as the Republic of Suriname, are immune from suit in the United States under the Federal Sovereign Immunities Act, 28 U.S.C. § 1602 et seq. (1988). One of the exceptions provided for in the Act permits an *in personam* action to enforce maritime lien rights against a vessel of a foreign state when the lien is based upon the commercial activities of the foreign state. 28 U.S.C. § 1605(b). Pursuant to the Act, after notice of the suit is given to the master or other person in charge of the vessel, "the suit to enforce [the] maritime lien shall thereafter proceed ... according to the principles of law and rules of practice of suits in rem...." 28 U.S.C. § 1605(b)(1) and (c); *see* H.R. No. 823, 100th Cong., 2d Sess. (1988), *reprinted in* 1988 U.S.C.C.A.N. 4511, 4511-12. Trans Ocean filed suit under this exception. The Act further permits the seizure of a foreign state's vessel to

2

seized and sold at auction; her proceeds were deposited in the registry of the district court awaiting division among SMS, Trans-Ocean and other claimants.

Trans Ocean moved for summary judgment after conducting discovery of cargo manifests and other documents to determine what portion of its leased containers had actually been used aboard the M/V SARAMACCA. Only in this way could Trans Ocean demonstrate that sixty-four containers were used at least once aboard the M/V SARAMACCA on voyages between the United States and Suriname, and ten of those had been used exclusively aboard the seized vessel.

The district court granted partial summary judgment in favor of Trans Ocean, acknowledging a maritime lien for past due rentals, repair costs, and depreciated replacement values for the ten containers used exclusively aboard the M/V SARAMACCA, and for prorated rentals, repair costs, and depreciated replacement values for the other fifty-four containers. In reaching this conclusion, the court held that for purposes of establishing a maritime lien, it was not necessary that the containers be earmarked for use aboard a particular vessel.

Judgment was entered in favor of Trans Ocean for a maritime lien of $73,352.00. When the court transferred and attached the lien to the proceeds of the vessel's sale, it limited the lien to $36,698.86, representing rentals, costs, and replacement values for containers provided in the United States. Upon ranking the

enforce preferred mortgage liens. 28 U.S.C. §§ 1605(d) and 1610(c). Silver Star's suit falls within this exception.

creditors' competing claims, the court ruled that Trans Ocean outranked Silver Star in the amount of $36,698.86.  Silver Star timely appealed the Rule 54(b) judgment.

## II. DISCUSSION

A maritime lien is a special property right in a vessel that "developed as a necessary incident of the operation of vessels." *Piedmont & Georges' Creek Coal Co. v. Seaboard Fisheries Co.,* 254 U.S. 1, 9, 41 S.Ct. 1, 3, 65 L.Ed. 97 (1920).  The lien secures creditors who provide "supplies which are necessary to keep the ship going."  *Dampskibsselskabet Dannebrog, et al. v. Signal Oil & Gas Co.,* 310 U.S. 268, 280, 60 S.Ct. 937, 943, 84 L.Ed. 1197 (1940).  The lien "arises in favor of the creditor by operation of law ... and grants the creditor the right to appropriate the vessel, have it sold, and be repaid the debt from the proceeds." *Equilease Corp. v. M/V SAMPSON,* 793 F.2d 598, 602 (5th Cir.) (en banc), *cert. denied,* 479 U.S. 984, 107 S.Ct. 570, 93 L.Ed.2d 575 (1986).

The Federal Maritime Lien Act, 46 U.S.C.A. §§ 31341-31343 (West Supp.1995) (FMLA) establishes a maritime lien for "providing necessaries to a vessel on the order of the owner or a person authorized by the owner."  46 U.S.C.A. § 31342.[2]  "Necessaries"

---

[2]The previous version of the Federal Maritime Lien Act was superseded by Congress in 1988. *See* 46 U.S.C. §§ 971-975 (1982) (superseded sections).  In so doing, Congress replaced the word "furnishing," as contained in the superseded version of the FMLA, with the word "providing," 46 U.S.C.A. § 31342.  The relevant House of Representative report states that the change was for consistency within the act and that no substantive change was intended.  H.R. No. 918, 100th Cong., 2d Sess. (1988), *reprinted in* 1988 U.S.C.C.A.N. 6104, 6107, 6141.  Most of the cases in this

include "repairs, supplies, towage, and the use of a dry dock or marine railway."  46 U.S.C.A. § 31301(4).

Three of our sister circuits have recently held that maritime lien rights do not attach for the benefit of bulk lessors of containers to owners or charterers of multiple vessels.  *Redcliffe Americas Limited v. M/V TYSON LYKES,* 996 F.2d 47 (4th Cir.1993); *Itel Containers Int'l Corp. v. Atlanttrafik Express Serv. Ltd.,* 982 F.2d 765 (2d Cir.1992);  *Foss Launch & Tug Co. v. Char Ching Shipping U.S.A., Ltd.,* 808 F.2d 697 (9th Cir.1987), *cert. denied,* 484 U.S. 828, 108 S.Ct. 96, 98 L.Ed.2d 57 (1987).

*Foss Launch,* the earliest of these cases, rests persuasively on the language of the maritime lien law and its interpretation by the Supreme Court.  Summarizing that court's opinion, *Foss Launch* held that although the containers were "necessaries" within the meaning of the Act, they had not been furnished "to" the vessels as is statutorily required.  *Foss Launch,* 808 F.2d at 703.  The court also felt bound by the seminal Supreme Court case, *Piedmont & Georges' Creek Coal Co. v. Seaboard Fisheries Co.,* 254 U.S. 1, 41 S.Ct. 1, 65 L.Ed. 97 (1920).  In *Piedmont,* a coal company agreed to provide the entire supply of coal for a company that owned both a fish factory and a fleet of vessels.  Despite the fact that the quantity of coal delivered to each vessel could be established after the fact, the Court held that the coal company did not have a maritime lien in the vessels.  *Piedmont,* 254 U.S. at 7-8, 13, 41

---

area arose under the "furnishing" version of the Act and, therefore, make reference to the "furnishing" requirement.

5

S.Ct. at 3, 5. The Court stated that although the use of the coal aboard the vessels had been contemplated, "the fact that such a use had been contemplated does not render the subsequent appropriation by the owner a furnishing *by the coal dealer to the several vessels.*" *Piedmont,* 254 U.S. at 8, 41 S.Ct. at 3 (emphasis added). *Piedmont* has been repeatedly construed as preventing the creation of a maritime lien where it is not the supplier but the fleet user of the "necessaries" that determines to which vessel or vessels they will be furnished. *Foss Launch,* 808 F.2d at 701; *Itel,* 982 F.2d at 767; *Redcliffe,* 996 F.2d at 50; *see also* 2 *Benedict on Admiralty* § 38, at 3-46 (7th Ed.1992).

Although the district court considered *Foss Launch, Itel,* and *Redcliffe,* he declined to follow them because of this court's decision in *Equilease Corp. v. M/V SAMPSON,* 793 F.2d 598 (5th Cir.) (en banc), *cert. denied,* 479 U.S. 984, 107 S.Ct. 570, 93 L.Ed.2d 575 (1986). Trans Ocean also contends that *Equilease* and *Atlantic & Gulf Stevedores, Inc. v. M/V GRAND LOYALTY,* 608 F.2d 197 (5th Cir.1979), compel a broad reading of the FMLA. We disagree.

*Equilease Corp. v. M/V SAMPSON* considered whether an FMLA lien could arise in favor of a provider of insurance to a vessel. This court decided that insurance is a "necessary", but that actual physical delivery of "necessaries" is not the sole means to satisfy the "furnishing" requirement of the Act. *Equilease,* 793 F.2d at 603-04. *Equilease* expansively decries "layering technicalities onto [the Act]," 793 F.2d at 603, but there is no factual similarity between that case and the present one. In *Equilease,*

6

the charterer "purchased insurance for each vessel," 793 F.2d at 600, an act strongly suggesting earmarking of the insurance to each vessel. *Equilease* is inapposite to interpreting the statute to cover cargo containers that, leased in bulk, were not only not earmarked but could be used intermodally on land as well as on numerous vessels.

In *Atlantic & Gulf, supra,* this court held that maritime lien rights extended against a vessel for certain stevedoring services and for costs associated with three days of detention caused by the presence of water and ammonia in the holds. This decision relied on the legislative history of the 1971 amendments to the FMLA, which established that Congress intended to make it easier for stevedores to "protect their interests by making maritime liens available where traditional services are routinely rendered." *Atlantic & Gulf,* 608 F.2d at 201. Whatever Congress intended with respect to stevedores hardly compels a statutory interpretation favoring bulk container lessors.

We find the reasoning of our sister circuits dispositive on this issue. In this case, Silver Star furnished containers to SMS, not to the SMS vessels, and it was SMS which ultimately dictated upon which vessel the containers were placed. Neither party knew aboard which ship a particular container would be placed at any given time. Silver Star has therefore failed to demonstrate that necessaries were provided to a vessel as required by the FMLA.

Trans Ocean, supported by an amicus brief by the Institute of International Container Lessors, has advanced interesting economic

7

and legal reasons why the FMLA ought to protect their industry, which owns "approximately 4 million [Twenty-Foot Equivalent Units] of international shipping containers and leases them to hundreds of shipping companies." Amicus Brief at 1. But in a commercial case such as this, there is much to be said for legal consistency and predictability. A decision by this circuit creating a circuit split and permitting the affixation of maritime liens for bulk container lessors would spawn uncertainty, compounded by forum-shopping and extravagant lien claims. Thus, even if we were not fully persuaded by the other circuit court's decisions, we should hesitate to launch maritime lien law into the chaotic waters sought by Trans Ocean and the amicus. As it happens, however, we have concluded after careful consideration that the sister circuits' decisions are uniform because they are right in their interpretation of the FMLA and *Piedmont.* If Trans Ocean's arguments are compelling, they should find a sympathetic hearing in Congress.

We need not reach the other issues raised by Silver Star.

## CONCLUSION

For the foregoing reasons, the district court erred in holding that Trans Ocean is the beneficiary of a lien for providing necessaries—cargo containers—that were leased in bulk and not earmarked for use on board the M/V SARAMACCA. The judgment is REVERSED and REMANDED for further proceedings consistent herewith.

8