# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

––––––––––

No. 19-30612

––––––––––

United States Court of Appeals
Fifth Circuit

**FILED**
June 17, 2020

Lyle W. Cayce
Clerk

MARTIN ENERGY SERVICES, L.L.C.,

     Plaintiff - Cross-Claimant - Appellee

v.

BOURBON PETREL M/V, etc., et al,

     Defendant

CGG SERVICES US, INCORPORATED,

     Intervenor Defendant - Cross-Defendant - Appellant

SNC BOURBON CE PATEL; CGG SERVICES, S.A.;

     Movants - Appellants

-----------------------------------------------------
MARTIN ENERGY SERVICES, L.L.C.,

     Plaintiff - Appellee
v.

MISS LILLY M/V, etc.,

     Defendant

SEA SUPPORT VENTURES, L.L.C., IN PERSONAM,

     Defendant - Appellant

CGG SERVICES, S.A.; CGG SERVICES US, INCORPORATED,

     Appellants

No. 19-30612

---------------------------------------------------

MARTIN ENERGY SERVICES, L.L.C.,

    Plaintiff - Appellee

v.

OMS RESOLUTION M/V, etc.,

    Defendant

v.

REDERIJ GROEN BV, IN PERSONAM,

    Defendant - Appellant

CGG SERVICES, S.A.; CGG SERVICES US, INCORPORATED,

    Appellants

---

Appeal from the United States District Court
for the Eastern District of Louisiana

---

Before BARKSDALE, HIGGINSON, and DUNCAN, Circuit Judges.

STUART KYLE DUNCAN, Circuit Judge:

Under the Commercial Instruments and Maritime Liens Act ("CIMLA"), 46 U.S.C. §§ 31301–31343, a person may obtain a maritime lien against a vessel by providing it with "necessaries." Here, plaintiff Martin Energy Services ("Martin") delivered fuel to three support vessels owned by C.G.G. Services, U.S., Inc. ("CGG"). The support vessels carried the fuel in their cargo tanks to refuel three other vessels performing seismic surveys off Louisiana's coast. When CGG failed to pay for the fuel, Martin sued, and the district court

No. 19-30612

concluded Martin had a maritime lien on the support vessels. That result unduly expands our maritime lien precedents. Fuel may be "necessary" to a vessel if it fuels the vessel. But the fuel transported by the support vessels was for refueling *other* vessels. That fuel was not "necessary" to the support vessels. We therefore reverse and render judgment for CGG.

## I.

In 2014, CGG was conducting seismic surveying operations off the coast of Louisiana with three vessels, the *Geo Celtic*, *Oceanic Sirius*, and *Oceanic Vega* (the "Seismic Vessels"). CGG was responsible for ensuring the Seismic Vessels were supplied with fuel, supplies, and equipment. To do so, CGG used three other vessels, the *Bourbon Petrel*, *OMS Resolution*, and *Miss Lilly* (the "Support Vessels"), which made deliveries to the Seismic Vessels from Port Fourchon, Louisiana. At first, CGG purchased fuel directly from Martin, but credit problems eventually led it to buy through a trader, O.W. Bunker USA, Inc. ("O.W. Bunker"). For the purchases at issue in this case, O.W. Bunker arranged for fuel deliveries through Martin.

Those fuel deliveries occurred in October and November 2014. Pursuant to purchase orders from O.W. Bunker, Martin delivered fuel to each of the three Support Vessels. Each vessel had a cargo tank for carrying fuel to the Seismic Vessels, as distinct from a "day tank" holding fuel for the Support Vessels themselves. On three separate occasions during this time, the Support Vessels transported thousands of gallons of fuel in their cargo tanks to refuel the Seismic Vessels.

Shortly after, O.W. Bunker filed for bankruptcy.[1] CGG had not yet paid O.W. Bunker's invoices for the Martin fuel. CGG eventually settled with O.W.

---

[1] This case is yet another "round in the maritime litigation spawned by the collapse of OW Bunker, formerly the world's largest supplier of fuel for ships." *ING Bank N.V. v. Bomin*

3

No. 19-30612

Bunker, but O.W. Bunker never forwarded payment to Martin. Martin then sued CGG in federal district court, asserting *in rem* claims against the Support Vessels and *in personam* claims against the vessels' owners. The *in personam* claims were disposed of on summary judgment, and the *in rem* claims were tried to the court.

The district court ruled for Martin. The court concluded that Martin's delivery of fuel gave rise to a maritime lien against the Support Vessels. It reasoned that the Martin fuel qualified as "necessaries" to those vessels under CIMLA. *See* 46 U.S.C. § 31342(a). The court also concluded the fuel was provided "on the order" of CGG or its authorized agent, as CIMLA requires. *See id.* Finally, the court awarded Martin pre-judgment interest dating from each fuel purchase. CGG timely appealed.

## II.

On appeal from a bench trial, we review fact findings for clear error and legal conclusions *de novo. Maritrend, Inc. v. Serac & Co. (Shipping) Ltd.*, 348 F.3d 469, 470 (5th Cir. 2003) (citation omitted). "Whether a maritime lien exists is a question of law, reviewed *de novo.*" *Comar Marine, Corp. v. Raider Marine Logistics, LLC*, 792 F.3d 564, 575 (5th Cir. 2015).

## III.

CIMLA[2] governs entitlement to maritime liens. *ING Bank N.V. v. Bomin Bunker Oil Corp.*, 953 F.3d 390, 393 (5th Cir. 2020) (quoting *Valero Mktg. & Supply Co. v. M/V Almi Sun, IMO No. 9579535*, 893 F.3d 290, 292 (5th Cir. 2018)). It states, in relevant part, that "a person providing *necessaries to a*

---

*Bunker Oil Corp.*, 953 F.3d 390, 391 (5th Cir. 2020) (quoting *NuStar Energy Servs., Inc. v. M/V COSCO Auckland*, 760 F. App'x 245, 246 (5th Cir.), *cert. dismissed*, --- U.S. ---,140 S. Ct. 339 (2019)).

[2] In 1988, CIMLA recodified the 1910 Federal Maritime Lien Act ("FMLA"), 46 U.S.C. §§ 971–975, without changing its substance. *See Maritrend,* 348 F.3d at 470–71.

*vessel* on the order of the owner or a person authorized by the owner . . . has a maritime lien on the vessel [and] may bring a civil action in rem to enforce the lien." 46 U.S.C. § 31342(a)(1), (2) (emphasis added). The lien "is a special property right in the vessel," which "grants the creditor the right to appropriate the vessel, have it sold, and be repaid the debt from the proceeds." *Equilease Corp. v. M/V Sampson*, 793 F.2d 598, 602 (5th Cir. 1986) (en banc) (citation omitted).[3] "We apply the provisions of CIMLA *stricti juris* to ensure that maritime liens are not 'lightly extended by construction, analogy, or inference.'" *Valero*, 893 F.3d at 292 (quoting *Atl. & Gulf Stevedores, Inc. v. M.V. Grand Loyalty*, 608 F.2d 197, 200–01 (5th Cir. 1979)).

While not defining "necessaries," CIMLA furnishes an illustrative list: "repairs, supplies, towage, and the use of a dry dock or marine railway." 46 U.S.C. § 31301(4). In that regard, "[n]ecessaries are the things that a prudent owner would provide to enable a ship to perform well the functions for which she has been engaged." *Equilease*, 793 F.2d at 603 (citing 2 Benedict on Admiralty § 34 (7th ed. 1984)). The term, which has a "broad meaning,"[4] includes "most goods or services that are useful to the vessel, keep her out of danger, and enable her to perform her particular function." *Id.* These are items useful "to vessel operations"[5] and "necessary to keep the ship going."[6]

---

[3] *See also Racal Survey, U.S.A., Inc. v. M/V Count Fleet*, 231 F.3d 183, 191 (5th Cir. 2000) (necessaries are "designated for specific vessels").

[4] *J. Ray McDermott & Co. v. Off-Shore Menhaden Co.*, 262 F.2d 523, 525 (5th Cir. 1959).

[5] *Gulf Marine & Indus. Supplies, Inc. v. Golden Prince M/V*, 230 F.3d 178, 180 (5th Cir. 2000) (discussing *Equilease*); *see also Silver Star Enterprises, Inc. v. Saramacca M/V*, 82 F.3d 666, 668 (5th Cir. 1996) (maritime liens "developed as a necessary incident of the operation of vessels") (quoting *Piedmont & George's Creek Coal Co. v. Seaboard Fisheries Co.*, 245 U.S. 1, 9 (1920)).

[6] *Silver Star*, 82 F.3d at 668 (quoting *Dampskibsselskabet Dannebrog v. Signal Oil & Gas Co.*, 310 U.S. 268, 280 (1940)).

No. 19-30612

## A.

It is undisputed that the Martin fuel was put into the cargo tanks of the Support Vessels, each of which transported it to refuel the Seismic Vessels. The issue is whether, as the district court concluded, that fuel constituted "necessaries" to the Support Vessels, giving rise to a maritime lien under CIMLA. The court reasoned that two of the Support Vessels, the *Bourbon Petrel* and the *OMS Resolution*, served as "floating gas stations" for the Seismic Vessels and that the fuel was "necessary" for the Support Vessels to perform this function. Similarly, the court reasoned the fuel was "necessary" for the third Support Vessel, the *Miss Lilly*, to function as an "offshore supply vessel," transporting fuel, equipment, and personnel to the Seismic Vessels. On appeal, CGG argues this was error. It contends the Martin fuel supported operation of the Seismic Vessels, not the Support Vessels. The fuel was merely cargo carried by the Support Vessels, and no authority supports deeming cargo "necessaries" for purposes of a maritime lien. We agree.

Fuel may qualify as a "necessary" to a vessel under CIMLA when it is supplied to refuel that vessel. *See, e.g.*, *Valero*, 893 F.3d at 291, 294 (there was "no dispute that [fuel] bunkers qualify as necessaries . . . to the Vessel" when plaintiff supplied fuel to a vessel that "needed refueling"). In such a case, fuel could be akin to "repairs, supplies, [or] towage," 46 U.S.C. § 31301(4): like those things, the fuel would be "necessary to keep the ship going." *Silver Star Enterprises, Inc. v. Saramacca M/V*, 82 F.3d 666, 668 (5th Cir. 1996) (quoting *Dampskibsselskabet Dannebrog v. Signal Oil & Gas Co.*, 310 U.S. 268, 280 (1940)). Therefore, the Martin fuel may have qualified as a "necessary" vis-à-

vis the Seismic Vessels.[7] We need not decide that question, however, because the Seismic Vessels are not parties here.

The Support Vessels present a different scenario. As the district court found, CGG utilized the Support Vessels "for ensuring that the Seismic Vessels were supplied with fuel and water." To that end, the fuel deliveries at issue "were put in the cargo tanks of the [Support Vessels]," and the entire amount was transported to the Seismic Vessels for their refueling. The district court did not find that any part of the Martin fuel was used to fuel the Support Vessels.[8]

Given those undisputed facts, there is no basis for concluding that the Martin fuel was a "necessary" as to the Support Vessels. To do so would, as CGG persuasively argues, "represent an unprecedented expansion of the CIMLA" by extending the concept of "necessaries" to *cargo* transported by a vessel. The parties cite no precedent—nor can we find any—supporting that expansion.[9] Based on that absence alone, we would reject the proposition. "The

---

[7] *See, e.g.*, *Belcher Co. of Ala. v. M/V Maratha Mariner*, 724 F.2d 1161, 1163 (5th Cir. 1984) (stating in *dicta* that, "when Belcher supplied fuel to the M/V Marantha Mariner, a maritime lien [under the FMLA] may have arisen by operation of law").

[8] As to the *Bourbon Petrel* and *OMS Resolution*, the district court found the Martin fuel *could not* have been used to refuel those vessels because their cargo tanks were "physically separated" from the "day tanks" used for their own fuel. The situation was more complex as to the *Miss Lilly*, because her cargo and day tanks were connected by piping and, during the period at issue, some fuel was transferred from her cargo to day tanks. The district court found this immaterial, however, because the amount of fuel transferred was *less* than the amount already aboard before the Martin deliveries. Consequently, the district court found the *Miss Lilly* "had sufficient fuel onboard to reach the Seismic Vessels prior to being loaded with the Martin Energy fuel." Martin does not argue that this finding is clearly erroneous. In any event, the district court did not base its conclusion on the *Miss Lilly*'s putative consumption of any of the Martin fuel.

[9] As CGG points out, some precedent supports the idea that the physical "containers" that enable cargo ships to transport cargo may qualify as "necessaries" for the cargo ship. *See Foss Launch & Tug Co. v. Char Ching Shipping U.S.A., Ltd.*, 808 F.2d 697, 700 (9th Cir. 1996). But, as CGG correctly argues, that precedent does not support the quite different idea that the *cargo itself* is a "necessary" as to the cargo ship.

absence of precedent signifies the weakness of [Martin's] position, since admiralty enjoys an unusually rich legal tradition and, more than nearly any other contemporary area of federal law, relies on venerable precedents where they exist." *Gulf Marine & Indus. Supplies, Inc. v. Golden Prince M/V*, 230 F.3d 178, 180 (5th Cir. 2000).

## B.

We are unpersuaded by the district court's reasoning and by Martin's arguments on appeal. The court reasoned the Martin fuel was necessary for the Support Vessels to perform their "particular function"—that is, as "floating gas stations" (the *Bourbon Petrel* and *OMS Resolution*), or an "offshore supply vessel" (the *Miss Lilly*). The court relied on decisions concluding maritime liens existed where goods and services (*e.g.*, liquor, linens, cigarettes, or advertising) were provided to assist vessels in their "particular functions" (*e.g.*, as a pleasure yacht, floating hotel, shrimper, or cruise ship).[10] On appeal, Martin continues to rely on these decisions. They are off point. In each, the good or service was provided for use by the vessel itself, and the resulting lien ran against that vessel. Here, by contrast, the Martin fuel was provided for use by the Seismic Vessels, not the Support Vessels. Any lien based on the fuel as a "necessary" would presumably run against the Seismic Vessels (something, again, we do not decide). *See Trico Marine Operators, Inc. v. Falcon Drilling Co.*, 116 F.3d 159, 161–62 (5th Cir. 1997) (supply boat services ferrying provisions to drilling rig were "necessaries" as to rig). The cases cited by the

---

[10] *See, e.g.*, *Portland Pilots, Inc. v. Nova Star M/V*, 875 F.3d 38, 41, 45 (1st Cir. 2017) (recognizing maritime lien for providing linens to a "floating hotel"); *Stern, Hays, & Lang, Inc. v. M/V Nili*, 407 F.2d 549, 551 (5th Cir. 1969) (recognizing maritime lien for providing advertising services to a cruise ship) (citing *Colonial Press of Miami, Inc. v. The Allen's Cay*, 277 F.2d 540 (5th Cir. 1960)); *Allen v. The M/V Contessa*, 196 F. Supp. 649, 651 (S.D. Tex. 1961) (recognizing maritime lien for cigarettes provided as part of crew provisions on shrimper); *Walker-Skageth Food Stores v. The Bavois*, 43 F. Supp. 109, 111 (S.D.N.Y. 1942) (recognizing maritime lien for providing liquor to a pleasure yacht).

district court (and Martin) fail to support the different proposition that the lien would run against the *Support* Vessels, which were merely carrying the fuel for other vessels' consumption.

Finally, claiming we must view the situation "from the vendor's perspective," Martin argues it had no way of knowing the fuel it delivered was destined for refueling the Seismic Vessels, not the Support Vessels. The district court did not rely on this proposition. To support it, Martin cites only our statement in *Equilease* that a "necessary" turns on the "present, apparent want of the vessel, not the character of the thing supplied." 793 F.2d at 603 (quoting 2 Benedict on Admiralty § 34). Martin misreads the quote. It means only that a "necessary" is determined by the need of the vessel; it says nothing about the "perspective of the vendor." Martin cites no other authority for introducing this element of subjectivity into the maritime lien analysis, because there is none.

In sum, we conclude that, contrary to the district court's conclusion, the fuel supplied for refueling the Seismic Vessels did not qualify as a "necessary" with respect to the Support Vessels and so did not create a maritime lien under CIMLA as to the Support Vessels.[11]

## CONCLUSION

The district court's judgment is REVERSED and judgment is RENDERED in favor of CGG.

---

[11] Given our resolution of the appeal, we do not reach CGG's argument that the fuel was not provided "on its order," nor its argument concerning pre-judgment interest.