# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 12, 2022

Lyle W. Cayce
Clerk

No. 21-60501

Central Boat Rentals, Incorporated; Global Towing Service, L.L.C.; Offshore Towing, Incorporated; McAllister Towing of New York, L.L.C.; Curtin Maritime Corporation,

*Intervenors—Appellants*,

*versus*

M/V Nor Goliath, *in rem*; Goliath Offshore Holdings, Private Limited, *in personam*,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC Nos. 1:19-CV-391, 1:19-CV-935

Before Owen, *Chief Judge*, and Higginbotham and Elrod, *Circuit Judges*.

Patrick E. Higginbotham, *Circuit Judge*:

Again, the familiar question of whether provisions were a "necessary" under the Commercial Instruments and Maritime Liens Act ("CIMLA").[1]

---

[1] 46 U.S.C. § 31301 *et seq.*

No. 21-60501

To its answer, able counsel bring creative arguments urging that we expand CIMLA's reach. We decline the invitation and affirm the judgment of the district court.[2]

## I.

This dispute arose from the bankruptcy of Epic Companies, L.L.C.[3] Epic was a general contractor that decommissioned oil platforms in the Gulf of Mexico, subcontracting with owners of various vessels to complete decommissioning projects, including heavy lift vessels, material barges, and tugboats. The M/V Nor Goliath was a heavy lift vessel hired by Epic to lift oil platform components out of the water and place them onto barges. Tugboats then towed the loaded barges from the Nor Goliath's location in the Gulf to an inland scrapyard for further dismantling, returning to the Nor Goliath with empty barges. These tugboats were owned by various towing companies.[4]

Upon Epic's bankruptcy, the suppliers looked elsewhere to recoup their costs. The Towing Companies joined a suit filed in the United States District Court for the Southern District of Mississippi, seeking to assert and enforce maritime liens under CIMLA against the Nor Goliath, maintaining that the tugboats provided it necessary services by towing the barges. The Nor Goliath and the Towing Companies each filed motions for summary

---

[2] We have jurisdiction to review this interlocutory appeal under 28 U.S.C. § 1292(a)(3) as the district court's grant of summary judgment determined the rights and liabilities of parties in an admiralty case.

[3] *See In re Epic Companies, LLC*, No. 19-34752 (Bankr. S. D. Tex., filed August 26, 2019).

[4] The Towing Companies are the named Intervenors-Appellants: Central Boat Rentals, Inc.; Global Towing Service, L.L.C.; Offshore Towing Inc.; McAllister Towing of New York, L.L.C.; and Curtin Maritime Corp.

No. 21-60501

judgment. The district court granted summary judgment to the Nor Goliath, holding that the services rendered by the tugboats did not create a lien on the Nor Goliath.[5] The Towing Companies timely appealed.

## II.

We review *de novo* a district court's grant of summary judgment.[6] We affirm a summary judgment ruling "when the nonmoving party fails to meet its burden to come forward with facts and law demonstrating a basis for recovery that would support a jury verdict."[7] "Whether a maritime lien exists is a question of law, reviewed *de novo*."[8]

## III.

Under CIMLA,

> a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner (1) has a maritime lien on the vessel; (2) may bring a civil action in rem to enforce the lien; and (3) is not required to allege or prove in the action that credit was given to the vessel.[9]

"'[N]ecessaries' includes repairs, supplies, towage, and the use of a dry dock or marine railway."[10]

---

[5] *See Arc Controls, Inc. v. M/V Nor Goliath*, No. 1:19CV391-LG-RPM, 2021 WL 1971485, (S.D. Miss. May 17, 2021).

[6] *World Fuel Servs. Singapore Pte, Ltd. v. Bulk Juliana M/V*, 822 F.3d 766, 770 (5th Cir. 2016).

[7] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1071 (5th Cir. 1994).

[8] *Comar Marine, Corp. v. Raider Marine Logistics, LLC*, 792 F.3d 564, 575 (5th Cir. 2015) (italicization added).

[9] 46 U.S.C. § 31342(a).

[10] 46 U.S.C. § 31301(4).

No. 21-60501

"We apply the provisions of CIMLA *stricti juris* to ensure that maritime liens are not lightly extended by construction, analogy, or inference."[11] Necessaries "includes most goods or services that are useful to the vessel, keep her out of danger, and enable her to perform her particular function. These are items useful to vessel operations and necessary to keep the ship going."[12] "Necessaries are the things that a prudent owner would provide to enable a ship to perform well the functions for which she has been engaged."[13] We look to the "particular function" and requirements of a ship to determine what is a necessary for that ship.[14]

**IV.**

First, the Towing Companies argue that the Nor Goliath's particular function was the entirety of the decommissioning process, therefore every good or service used to decommission an oil platform was a necessary to the Nor Goliath. We disagree. The decommissioning project was Epic's goal as the general contractor. Indeed, Epic hired a fleet of vessels for the project. As the Nor Goliath's role was to lift platform components and place them on the barges,[15] its necessaries are goods or services it used for this particular function.

---

[11] *Valero Mktg. & Supply Co. v. M/V Almi Sun, IMO No. 9579535*, 893 F.3d 290, 292 (5th Cir. 2018) (internal quotations omitted).

[12] *Martin Energy Servs., L.L.C. v. Bourbon Petrel M/V*, 962 F.3d 827, 831 (5th Cir. 2020) (internal quotations omitted).

[13] *Equilease Corp. v. M/V Sampson*, 793 F.2d 598, 603 (5th Cir. 1986) (en banc).

[14] *Martin*, 962 F.3d at 832–33. *See also Equilease*, 793 F.2d at 603 ("What is a 'necessary' is to be determined relative to the requirements of the ship.").

[15] *See Arc Controls, Inc. v. M/V NOR GOLIATH*, No. 1:19CV391-LG-RPM, 2021 WL 2931426, at *2 (S.D. Miss. July 12, 2021).

Second, the Towing Companies argue their towing services provided the barges to the Nor Goliath, and the barges are equipment necessary for the Nor Goliath's particular function. Not so. In *Trico Marine Operators, Inc. v. Falcon Drilling Co.*, we held that drilling equipment was a necessary for an offshore drilling vessel, for the equipment was necessary for the vessel's particular function—drilling.[16] Then, in *Martin Energy Servs., L.L.C. v. Bourbon Petrel M/V*, we held that gasoline is not a necessary to a vessel tasked with carrying the gasoline as cargo to another vessel for its consumption, only the consuming vessel received a necessary.[17] This is because liens arise when "the good or service was provided for use by the vessel itself."[18]

It is plain that the barges were not equipment for the Nor Goliath, did not help the Nor Goliath's crane raise and lower the platform components, and so the Nor Goliath did not "use" the barges. It follows that the Towing Companies did not provide a service necessary to the Nor Goliath's particular function.

Third, the Towing Companies alternatively contend that they provided a necessary as the decommissioning project would have ground to a halt without the tugboats moving the barges; thus the Nor Goliath indirectly benefitted from the towing of the barges. The argument that maritime liens arise from indirect benefit misapprehends the concept of liens for necessaries. Mutually beneficial conduct is expected when each vessel was hired by the same general contractor. Indeed, every ship in Epic's fleet indirectly benefitted from the barges being towed just as every ship indirectly benefitted from the Nor Goliath's lifting and loading. But mutually beneficial

---

[16] 116 F.3d 159, 162 (5th Cir. 1997).

[17] *Martin*, 962 F.3d at 832–33.

[18] *Id.* at 833.

conduct alone cannot give rise to a maritime lien under CIMLA, otherwise multi-ship operations would give rise to an untenable situation where all the ships in a fleet would have liens on the other. In short, maritime liens for necessaries run against the vessel that received the necessary and no further.[19]

## V.

Note that the Towing Companies also claim that they are entitled to maritime liens as they protected the Nor Goliath from the hazards of the sea, alleging that the Nor Goliath would be in danger if it was forced to hold an oil platform component suspended by its crane in choppy waters. Whatever its merits, the Towing Companies did not present any evidence of the danger these conditions posed to the Nor Goliath, which previously suspended and transported large loads without the aid of barges. As the nonmovants at the summary judgment stage, the Towing Companies did not meet their burden to demonstrate that the Nor Goliath was in danger beyond their conclusory allegations and unsubstantiated assertions.[20]

## VI.

Ultimately these arguments for extending the protection of liens for necessaries provided by CIMLA fail to accept that the primacy of the lien is essential to its role of securing necessaries for vessels. They require the suppliers of necessaries, as we have defined them, to share pro rata with other creditors, a loss of primacy diluting the incentive to suppliers to the detriment of CIMLA's core mission. These economic realities were not lost on Congress as evidenced by its singular treatment of maritime liens,

---

[19] *Id.*

[20] *Little*, 37 F.3d at 1075.

No. 21-60501

providing a separate statutory pathway for enforcement within CIMLA.[21] Attentive to the economic realities to which CIMLA's plain language responds, we apply its language *stricti juris*.[22]

The Towing Companies fail to demonstrate a legal basis for their claimed maritime liens against the Nor Goliath. The district court's grant of summary judgment is AFFIRMED.

---

[21] 46 U.S.C. § 31342.

[22] *Valero*, 893 F.3d at 292.